STATE of Missouri, Plaintiff–
Respondent,

v.

Edward L. DYE, Defendant–Appellant.

No. 28657.

Missouri Court of Appeals,
Southern District,
Division Two.

Dec. 10, 2008.

Margaret M. Johnston, Columbia, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Robert J. (Jeff) Bartholomew, Asst. Atty. Gen., Jefferson City, for respondent.

JOHN E. PARRISH, Judge.

Edward L. Dye (defendant) was convicted, following a jury trial, of possession of cocaine base, a controlled substance. § 195.202.[1] Defendant was charged as, found to be, and sentenced as a persistent offender. *See* § 558.016.3. This court reverses and remands for new trial.

Poplar Bluff Police Officer Joseph Craft was dispatched to the 400 block of Bartlett Street in Poplar Bluff to investigate an anonymous report of a person "possibly panhandling" by knocking on doors of residences soliciting a ride home. The report was received at 10:48 p.m. The description of the person reported to be knocking on neighborhood doors "was a black male with a light colored shirt and wearing a sock cap."

At 11:00 p.m. Officer Craft observed defendant walking down a street about 300 feet from the area in question. Defendant matched the description that was given in the report the police received. Officer Craft stopped his patrol car and activated lights on the car that illuminated the area. Officer Craft was asked what he would have done if defendant had not stopped but kept walking. He said he would have "asked him to stop"; told defendant that he was not free to go; that defendant had to stop and talk "[f]or the moment."

Officer Craft told the jury, "Whenever I made contact with [defendant] I went ahead and advised him that I was going to go ahead and do a pat down for my safety. Instead of placing my hands on him I asked him if he minded emptying his pockets and placing the contents on the hood of my car." Officer Craft was asked the following questions and gave the following answers.

Q. Did he acquiesce to that request?

A. Yes, he did.

Q. That was to avoid, huh—

A. Exactly. It was to keep from placing my hands on him and risking anything for him or I.

Q. Okay, and when he emptied his pockets was there anything that was in those pockets that could have contained anything else?

A. Yes.

. . .

Q. All right, Officer Craft, when he emptied his pockets what sort of contents did he empty?

A. Huh, I believe general change, huh, general items, I know there was an opened pack of cigarettes. There was a walkie-talkie also I believe.

Officer Craft identified the pack of cigarettes that defendant produced. He said he asked permission to look inside the pack; that defendant granted permission. Officer Craft found a small plastic bag inside the cigarette pack that contained a

---

1. References to statutes are to RSMo 2000.

white rock-like substance. He arrested defendant for possession of a controlled substance. Laboratory tests confirmed the substance was cocaine base.

■ Defendant presents one point on appeal. He argues that the trial court erred in denying a motion to suppress evidence and in overruling objections to the admission in evidence of the substance seized from defendant because the "stop" of defendant was contrary to his "right to be free from unlawful search and seizure"; that the officer's actions in stopping defendant were not based on "reasonable suspicion that [defendant] committed a crime," and the officer "did not independently observe any behavior that would justify the stop." Defendant contends his "consent to the search was not voluntarily made nor was it sufficiently attenuated" from what he asserts was an illegal stop "to purge the taint of the illegality."

The Fourth Amendment of the United States Constitution preserves the right of the people to be secure against unreasonable searches and seizures. Missouri's constitutional "search and seizure" guarantee, article I, section 15, is co-extensive with the Fourth Amendment. *State v. Rushing*, 935 S.W.2d 30, 34 (Mo.banc 1996). A warrant based upon probable cause is generally required to justify a search or seizure. However, the Fourth Amendment does not prohibit a so-called *"Terry"* stop—a stop followed by a "frisk" or "pat-down" for weapons—that is based on reasonable suspicion supported by articulable facts that the person stopped is engaged in criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).... "Reasonable suspicion," which is a less demanding standard than "probable cause," *Alabama v. White*, 496 U.S. 325, 330, 110 S.Ct. 2412, 110

L.Ed.2d 301 (1990), is to be determined by reference to the "totality of the circumstances." *Id.* (citing *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)).

*State v. Deck*, 994 S.W.2d 527, 534 (Mo. banc), *cert. denied*, 528 U.S. 1009, 120 S.Ct. 508, 145 L.Ed.2d 393 (1999). To justify a forcible stop, an officer must have an articulable suspicion that the person being stopped has been, is, or is about to be engaged in criminal activity. *State v. Thompson*, 826 S.W.2d 17, 19 (Mo.App.), *cert. denied*, 506 U.S. 884, 113 S.Ct. 242, 121 L.Ed.2d 176 (1992), quoting *United States v. Place*, 462 U.S. 696, 702, 103 S.Ct. 2637, 77 L.Ed.2d 110 (1983). "Once a valid stop has been made, police may pat a suspect's outer clothing *if they have a reasonable, particularized suspicion that the suspect is armed.* [Emphasis added.] [*Terry*, 392 U.S. at 27, 88 S.Ct. 1868.] 'The purpose of this limited search is not to discover evidence of crime, but to allow the officer to pursue his investigation without fear of violence....' *Adams v. Williams*, 407 U.S. 143, 146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612 (1972)." *State v. Rushing*, 935 S.W.2d 30, 32 (Mo.banc 1996), *cert. denied*, 520 U.S. 1220, 117 S.Ct. 1713, 137 L.Ed.2d 837 (1997).

■ At the time Officer Craft stopped defendant, defendant "was just walking along the street." Officer Craft was not aware of any crime being committed. Officer Craft was asked, "[N]ow this whole stop started because you received a report of panhandling, correct?" He answered, "Yes." Officer Craft acknowledged that it was not illegal to ask for a ride; that it was not illegal to knock on someone's door. He stated that there was a city ordinance against panhandling, but he did not know the number of the ordinance.[2] He was not

---

**2.** Other than remarks by Officer Craft, the record does not reveal information about a

aware of a state law against panhandling. He did not know who placed the call reporting someone knocking on doors in the area where he stopped defendant.

■■■ The record does not reveal that the officer who stopped defendant, seized the contents of the cigarette package that were determined to contained a controlled substance, and arrested defendant for possessing a controlled substance had a reasonable, articulable suspicion when the stop was made that defendant was committing a crime or had been, or was about to be, engaged in criminal activity. Neither was there evidence of a particularized suspicion that defendant was armed. The investigatory stop was invalid. Unless, as the state argues, the consent to the search that produced the cocaine base was consensual, the evidence obtained as a result of the stop was inadmissible. *See State v. Franklin,* 841 S.W.2d 639, 645 (Mo.banc 1992).

A consent to search which is preceded by a Fourth Amendment violation is valid only if it is in fact voluntary. *State v. Riddle,* 843 S.W.2d 385, 387 (Mo.App. 1992). To qualify as such, the consent must be sufficiently an act of free will so as to purge the taint of the illegal detention. *Id.* Whether the consent is in fact voluntary is determined by looking at the totality of the circumstances and is an issue upon which the State bears the burden. *Id.* The State does not satisfy its burden of showing that the consent was voluntary by merely showing a submission to a claim of lawful authority. *Florida v. Royer,* 460 U.S. [491] at 497, 103 S.Ct. [1319] at 1324, 75 L.Ed.2d [229] at 236 [(1983)].

*State v. Talbert,* 873 S.W.2d 321, 324 (Mo. App.1994).

*Talbert* sets forth three factors for evaluating whether consent is voluntary; "(1) the temporal proximity of the illegal detention and the consent; (2) any intervening circumstances; and (3) the purpose and flagrancy of the officer's conduct." *Id.* at 324–25. Here, defendant was asked to consent to a search almost immediately following the illegal stop. There was no evidence of intervening circumstances. The record does not reflect purposeful or flagrant misconduct on the part of Officer Craft. However, as observed in *State v. Miller,* 894 S.W.2d 649, 656 (Mo.banc 1995), where, as here, the first two factors weigh heavily against a finding of voluntariness, the absence of purposeful and flagrant misconduct does not, standing alone, dissipate the taint that the search was an attenuation of the illegal stop. The trial court erred in admitting in evidence the crack cocaine seized as a result of the invalid investigatory stop. Defendant's point on appeal is granted. The judgment is reversed and the case remanded for new trial.

LYNCH, C.J., and RAHMEYER, J., concur.

Poplar Bluff city ordinance directed to "panhandling." No city ordinance was offered or admitted in evidence. As such, there is no evidence before this court that identifies conduct on which Officer Craft could have legitimately made an investigative stop. *See City of University City v. MAJ Investment Corp.,* 884 S.W.2d 306, 308 (Mo.App.1994).