STATE of Missouri, Appellant,

v.

Michael Lee PEERY, Respondent.

No. WD 71070.

Missouri Court of Appeals,
Western District.

Feb. 2, 2010.

Mike Fusselman, Prosecuting Attorney, Moberly, MO, for Appellant.

Kirk S. Zwink, Macon, MO, for Respondent.

Before Division III: MARK D. PFEIFFER, Presiding Judge, and JAMES E. WELSH and KAREN KING MITCHELL, Judges.

MARK D. PFEIFFER, Presiding Judge.

■ This is an interlocutory appeal filed by the State of Missouri (State) pursuant to section 547.200.1,[1] appealing the Circuit

---

1. All statutory references are to Revised Statutes of Missouri (2000) unless otherwise noted. In Missouri, the right to appeal is purely statutory and only exists where a statute confers the right to appeal. *Barlow v. State,* 114 S.W.3d 328, 331 (Mo.App. W.D.2003). Sec-

Court of Randolph County's (motion court) order sustaining Michael Peery's (Peery) motion to suppress evidence recovered during the police's search of his vehicle on the basis that the search violated the Fourth Amendment to the United States Constitution. On appeal, the State presents one point in which it claims that the police's search did not violate the Fourth Amendment because it fell within the *Terry*[2] stop exception to the Fourth Amendment. We reverse.

### Factual and Procedural Background

On the evening of February 21, 2009, Moberly police officers staked out a parking lot located at 1600 N. Morley Street, in Moberly, Missouri, based on information they had received from a confidential informant that a drug transaction was scheduled to take place there. The officers were informed that the confidential informant was going to purchase marijuana from Dustin Peery (Dustin) and that Dustin would be driving a green Plymouth Neon.

Detective Arnsperger was responsible for monitoring the activities of the confidential informant on the parking lot. After placing a wire on the confidential informant, Arnsperger began hidden surveillance. Around 6:00 p.m., Arnsperger saw the green Plymouth Neon pull onto the lot and it was followed by a teal Ford Contour. The Ford Contour pulled past the Plymouth Neon and stopped near the confidential informant's vehicle. The confidential informant walked over to the driver of the Ford and said, "Hi." After this brief exchange, the Ford pulled to the corner of the lot and stopped. The confidential informant then completed the drug transaction with Dustin. After the transaction, the offi-

cers moved in to arrest Dustin. As the police approached Dustin's vehicle, the Ford began to leave the parking lot, and Detective Arnsperger ordered other officers to stop it. Officers stopped the Ford. As they approached the vehicle, they smelled marijuana. Based on this smell, the officers conducted a search of the vehicle. The officers observed a large baggie of marijuana between the center console and the passenger seat. The driver of the vehicle identified himself as Peery. Based upon the marijuana found in the vehicle, the police officers arrested Peery.

The State charged Peery with one count of possession of more than five grams of a controlled substance with an intent to distribute, in violation of section 195.211. Peery filed a motion to suppress the evidence found in the Ford in which he argued that the officers lacked reasonable suspicion to make the initial stop of his vehicle. After a hearing on the motion, the motion court found the facts as stated above and entered an order sustaining Peery's motion to suppress. This interlocutory appeal follows.

The State argues that the motion court erred in sustaining Peery's motion to suppress because the motion court incorrectly concluded that the officers lacked reasonable suspicion to stop Peery's vehicle. In support of its position, the State argues that the totality of the circumstances surrounding the controlled buy raises a fair inference that criminal activity was afoot, and therefore, the officers had reasonable suspicion to stop Peery's vehicle. Consequently, the sole issue on appeal is whether the investigating officers had reasonable suspicion to make an initial stop of Peery's vehicle.

tion 547.200.1 permits the State to appeal an interlocutory order suppressing evidence.

**2.** *Terry v. Ohio*, 392 U.S. 1, 21–22, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

## Standard of Review

Our review of the motion court's order sustaining a defendant's motion to suppress is limited to the determination of whether substantial evidence existed to support the suppression order. *State v. Rousan,* 961 S.W.2d 831, 845 (Mo. banc 1998). The reviewing court must give deference to the trial court's factual findings and credibility determinations and must "consider[ ] all evidence and reasonable inferences in the light most favorable to the trial court's ruling." *State v. Sund,* 215 S.W.3d 719, 723 (Mo. banc 2007). We will reverse a motion court's ruling on a motion to suppress only if the ruling is clearly erroneous. *State v. Granado,* 148 S.W.3d 309, 311 (Mo. banc 2004). That said, while we review the motion court's conclusions as to the historical facts under a clearly erroneous standard, whether the Fourth Amendment has been violated is an issue of law that we review *de novo. Sund,* 215 S.W.3d at 723; *see also, State v. Schmutz,* 100 S.W.3d 876, 878 (Mo.App. S.D.2003) ("Whether the historical facts as found by the trial court add up to reasonable suspicion is a question of law that we review *de novo.*"). As our United States Supreme Court has stated in *Ornelas v. United States,* 517 U.S. 690, 697, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996): [3]

> We think independent appellate review of these ultimate determinations of reasonable suspicion and probable cause is consistent with the position we have taken in past cases. We have never, when reviewing a probable-cause or reasonable-suspicion determination ourselves, expressly deferred to the trial court's determination. See, *e.g., Brinegar, supra* (rejecting District Court's conclusion that the police lacked probable cause); *Alabama v. White,* 496 U.S. 325, 110 S.Ct. 2412, 110 L.Ed.2d 301 (1990) (conducting independent review and finding reasonable suspicion). A policy of sweeping deference would permit, "[i]n the absence of any significant difference in the facts," "the Fourth Amendment's incidence [to] tur[n] on whether different trial judges draw general conclusions that the facts are sufficient or insufficient to constitute probable cause." *Brinegar [v. United States], supra,* [338 U.S. 160] at 171, 69 S.Ct. [1302] at 1308 [93 L.Ed. 1879 (1949)]. Such varied results would be inconsistent with the idea of a unitary system of law. This, if a matter-of-course, would be unacceptable.

> In addition, the legal rules for probable cause and reasonable suspicion acquire content only through application. Independent review is therefore necessary if appellate courts are to maintain control of, and to clarify, the legal principles....

> Finally, *de novo* review tends to unify precedent and will come closer to providing law enforcement officers with a defined " 'set of rules which, in most instances, makes it possible to reach a correct determination beforehand as to whether an invasion of privacy is justified in the interest of law enforcement.' "

## Reasonable Suspicion

 The Fourth Amendment to the U.S. Constitution, which is enforceable against the states through the Due Process Clause of the Fourteenth Amendment, guarantees the right of the people to be secure from unreasonable searches and seizures. *State v. Deck,* 994 S.W.2d 527, 534 (Mo. banc 1999). Article I, section 15

---

**3.** Decisions of the United States Supreme Court construing the Fourth Amendment are "strongly persuasive" in construing Missouri search and seizure issues. *State v. Rushing,* 935 S.W.2d 30, 34 (Mo. banc 1996).

of the Missouri Constitution guarantees this same right. *Id.* Because of these constitutional guarantees, warrantless searches and seizures are deemed *per se* unreasonable unless the search and seizure fits into a well-established exception. *State v. Martin,* 79 S.W.3d 912, 916 (Mo. App. E.D.2002).

■ One exception to the warrant requirement is known as a *"Terry* stop." *Id.*[4] Pursuant to this exception, police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot. *Terry,* 392 U.S. at 30, 88 S.Ct. 1868; *State v. Daniels,* 221 S.W.3d 438, 442 (Mo.App. S.D.2007) (citing *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989)).

■ While no exact formula exists defining reasonable suspicion, *Schmutz,* 100 S.W.3d at 880; *State v. Cain,* 287 S.W.3d 699, 706 (Mo.App. S.D.2009), it is clear that the Fourth Amendment requires only "some minimal level of objective justification" for a *Terry* stop. *I.N.S. v. Delgado,* 466 U.S. 210, 217, 104 S.Ct. 1758, 80 L.Ed.2d 247 (1984). Furthermore, the facts and inferences on which the officer acts need not exclude every possible interpretation other than criminal activity. *State v. Lanear,* 805 S.W.2d 713, 716 (Mo. App. W.D.1991). "The standard is whether the facts available to the officer at the moment of the seizure warrant a person of reasonable caution in the belief that the action taken was appropriate." *Id.* (citing *State v. Lasley,* 583 S.W.2d 511, 518 (Mo. banc 1979)).

■ When reviewing an officer's determination of reasonable suspicion, the trial court must look at the totality of the circumstances—the whole picture. *United States v. Arvizu,* 534 U.S. 266, 273–74, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (trial court's evaluation and rejection of certain factors in isolation from each other does not take into account the totality of the circumstances); *United States v. Cortez,* 449 U.S. 411, 417, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981); *State v. Hawkins,* 137 S.W.3d 549, 558 (Mo.App. W.D.2004). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them 'that might well elude an untrained person.'" *Arvizu,* 534 U.S. at 273, 122 S.Ct. 744 (quoting *Cortez,* 449 U.S. at 418, 101 S.Ct. 690). Our determination of reasonable suspicion is based on commonsense judgments and inferences about human behavior. *Illinois v. Wardlow,* 528 U.S. 119, 125, 120 S.Ct. 673, 145 L.Ed.2d 570 (2000) (citing *Cortez,* 449 U.S. at 418, 101 S.Ct. 690).

■ Courts recognize that the totality-of-the-circumstances approach allows officers to make *Terry* stops even when some circumstances may be consistent with innocent behavior. *Wardlow,* 528 U.S. at 125, 120 S.Ct. 673. However, the risk of stopping innocent people is justifiable because a *Terry* stop is of "minimal intrusion," only allowing the officer to briefly investigate. *Id.* at 126, 120 S.Ct. 673.

■ Reasonable suspicion is a less stringent standard than probable cause. *State v. Pike,* 162 S.W.3d 464, 473 (Mo. banc 2005). Thus, the State may establish that the police officer had reasonable suspicion even though they had information that was less reliable than the evidence that would

---

4. The U.S. Supreme Court first extended the *Terry v. Ohio* "stop and frisk" principles to motor vehicle stops in the case of *Michigan v.* *Long,* 463 U.S. 1032, 1049, 103 S.Ct. 3469, 77 L.Ed.2d 1201 (1983).

be required to establish probable cause. *Id.* An officer's suspicion is reasonable when the officer is able to point to specific and articulable facts and inferences, which establish a particularized and objective basis for suspecting illegal activity. *State v. Woods*, 284 S.W.3d 630, 635 (Mo.App. W.D.2009).

## Analysis

■ The historical facts articulated by the motion court in support of its suppression order were as follows:

Detective Arnsperger was monitoring the activities of the confidential informant on the parking lot. The officers had information from the confidential informant that he was going to purchase marijuana from Dustin Peery who would be driving a green Plymouth Neon. The officers had no information about anybody else being involved in the transaction. Arnsperger saw the green Neon pull onto the lot and it was followed by a teal Ford Contour. The Ford went by the vehicle driven by Dustin Peery and stopped near the confidential informant's vehicle. The confidential informant walked over to the driver of the Ford and said "Hi." No one got out of the Ford. There is no evidence as to any statements made by the driver to the confidential informant. The Ford pulled away to the corner of the lot and stopped. The confidential informant then completed the drug transaction with Dustin Peery. The Ford Contour started to leave the parking lot and Arnsperger ordered it stopped by other officers who subsequently conducted a search and found marijuana in the car.

From these historical facts, the motion court concluded that these facts did not create reasonable suspicion:

In this case, the defendant was present on the parking lot when the transaction took place. There is no evidence that he took part in it. The officers had no prior knowledge that he was to be a part of it and had no reason to be on the look out for him or for his car. The confidential informant did not testify. There is no evidence to show whether the confidential informant and the defendant were acquainted and the only evidence of any contact between them was the exchange of the word "Hi." There is no evidence that the defendant committed any traffic violation as he left the parking lot. The defendant did not take any unusual or suspicious actions while on the lot. The transaction took place at approximately 6:00 p.m. so the time of day raises no particular red flags.

The defendant cites *State v. Dye*, 272 [S.W.3d] 879 and *State v. Sch[mutz]*, 100 [S.W.3d] 876 in support of his position. Based on the holdings therein and on the facts of this case, the court does not believe that the officers had reasonable suspicion or articu[l]able facts to justify a stop of defendant's vehicle.

We disagree.

The motion court is correct that Peery's mere presence in the shopping center lot after hours was not a sufficient enough fact, standing alone, to give the police reasonable suspicion that he had engaged in, or was engaging in, illegal activity. *Schmutz*, 100 S.W.3d at 880 (holding that the officer did not have reasonable suspicion to stop the vehicle solely because the vehicle drove onto a lot after hours and then left in a "hurry"); *see also State v. Dye*, 272 S.W.3d 879, 881 (Mo.App. S.D. 2008). This is because the courts have stated that "the time of day is only a marginal consideration in the reasonable suspicion analysis." *Schmutz*, 100 S.W.3d at 880.

Of course, in both *Schmutz* and *Dye,* the defendants were in areas that were not known to be a high-crime area or *a location of suspected drug trafficking.* In this case, however, the motion court's factual findings reveal that the parking lot in question at the date and time in question, especially at the specific location of the confidential informant's vehicle, was a location that the police officers knew to be "a location of suspected drug trafficking." Of note, the U.S. Supreme Court has held that the location's characteristics in which the officer encounters the vehicle are a significant factor in formulating reasonable suspicion. *United States v. Brignoni-Ponce,* 422 U.S. 873, 884, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Thus, while an individual's presence in an area of expected criminal activity, standing alone, is not enough to trigger reasonable suspicion, *Wardlow,* 528 U.S. at 124, 120 S.Ct. 673, the fact that Peery arrived in a shopping center parking lot at the precise time and place of a scheduled drug transaction is relevant to whether or not the police had reasonable suspicion to believe that he may have been engaged in illegal activity. This is especially true when we view this fact together with the remarkable string of additional factual "coincidences" that the motion court itemizes and that the officers observed before initiating the *Terry* stop.

For example, the motion court also found that Peery's vehicle followed the vehicle driven by Dustin, the police's suspect in the drug buy, onto the parking lot. Then, upon entering the parking lot, the suspect's vehicle permitted Peery's vehicle to pass the suspect's vehicle, stop near the confidential informant's vehicle, at which point the confidential informant walked over to Peery and said, "Hi." The motion court concludes that this conduct is not at all "unusual." Other courts have concluded that, at bare minimum, this is evidence of "tandem driving" and relevant to a reasonable suspicion analysis. These courts have held that "tandem driving, though oftentimes explicable on entirely innocent grounds, may ... indicate criminal activity." *United States v. Ocampo,* 937 F.2d 485, 490 (9th Cir.1991). This is especially true when the police suspect the occupants of the other vehicle of criminal activity. *United States v. Owens,* 101 F.3d 559, 561–62 (8th Cir.1996). Thus, with this additional fact, the police had one more "fact" to rely upon in articulating a string of facts to lead to a reasonable basis for believing that Peery may have been involved in illegal activity.

The motion court also found that, immediately after pulling up adjacent to the confidential informant's vehicle and waiting for the confidential informant to exit his vehicle and say "Hi," Peery drove his vehicle to the corner of the parking lot where he parked and took no further action until, coincidentally, the confidential informant had completed his drug deal with Dustin and the police moved in for the drug bust, at which point Peery attempted to exit the parking lot. Courts have considered similar conduct to be suggestive of counter-surveillance by a participant in a drug transaction. *See United States v. Diaz–Lizaraza,* 981 F.2d 1216, 1221 (11th Cir.1993) (officer's belief that person was engaged in counter-surveillance was reasonable when record showed that the defendant showed up with the suspect and drove back and forth in front of store while the suspect purchased drugs); *Ocampo,* 937 F.2d at 490 (holding that counter-surveillance driving is a fact indicative of illegal activity); *United States v. Green,* 52 F.3d 194, 198–99 (8th Cir. 1995) (observing a suspect engaged in counter-surveillance efforts can serve as one basis for establishing reasonable suspicion); *United States v. Martinez–Molina,* 64 F.3d 719, 729 n. 8 (1st Cir.1995) ("It is

well settled that counter-surveillance efforts are indicative of knowing participation in criminal activity.").

Finally, the motion court found that Peery, coincidentally, did not exit his vehicle parked at the corner of the parking lot and did not take any further action until he attempted to leave the parking lot after the drug transaction was complete and after the police moved in to arrest Dustin. Based on the timing of Peery's attempted exit from the scene, the police could have reasonably suspected that he was involved in the drug transaction. *Wardlow*, 528 U.S. at 124, 120 S.Ct. 673 ("Headlong flight—wherever it occurs—is the consummate act of evasion: it is not necessarily indicative of wrongdoing, but it is certainly suggestive of such."); *State v. Robertson*, 262 S.W.3d 285, 288 (Mo.App. W.D.2008) (stating that flight from the scene is an indicator of guilt). Likewise, actions of nervous or evasive behavior are relevant considerations in determining the existence of reasonable suspicion. *Wardlow*, 528 U.S. at 124, 120 S.Ct. 673; *see also Sokolow*, 490 U.S. at 8–11, 109 S.Ct. 1581.

If the only "fact" of Peery's relationship to the drug transaction was that Peery happened to arrive at the parking lot at the time and place of the planned drug transaction, this conduct alone might not justify a finding of reasonable suspicion that Peery was involved in the transaction.

If the only "fact" of Peery's relationship to the drug transaction was that he followed the suspect's vehicle into the parking lot, passed the suspect's vehicle, pulled alongside the confidential informant's vehicle, and waited for the confidential informant to exit the vehicle and say "Hi" before driving away, this conduct alone might not justify a finding of reasonable suspicion.

If the only "fact" of Peery's relationship to the drug transaction was that he happened to enter the parking lot and park in the corner of the lot while the drug transaction was taking place, this conduct alone might not justify a finding of reasonable suspicion that Peery was involved in the transaction.

If the only "fact" of Peery's relationship to the drug transaction was that he happened to exit the parking lot after the drug transaction took place and after the police moved in to arrest the suspect in the drug transaction, this conduct alone might not justify a finding of reasonable suspicion that Peery was involved in the transaction.

But, this case does not present any one of those "facts" as the only "fact." This case presents *all* of those "facts" itemized by the motion court in its suppression order. Any one of these facts may properly be deemed an innocent coincidence, but when all of these "coincidences" are added together, it is erroneous to conclude that this string of facts is anything but a pattern of conduct suggestive of involvement in criminal activity. It is erroneous to conclude that this cumulative evidence of Peery's conduct fails to establish a particularized and objective basis for suspecting illegal activity. When reviewing the whole picture, it is erroneous to conclude that the officers in this case failed to point to articulable facts that criminal activity may be afoot. It is erroneous to conclude that the totality of the circumstances of the facts of this case fail to demonstrate a minimal level of objective justification for a *Terry* stop.

The police were justified in briefly stopping Peery to investigate his presence on the scene. Of course, if during the brief stop, Peery offered innocent explanations for his behavior and the police did not discover any other incriminating evidence, the police would not have been allowed to

**158**

detain Peery indefinitely and would have been required to allow him to leave the scene. In this case, however, after the police stopped Peery's vehicle, the police approached it and immediately smelled marijuana and saw a baggie of marijuana in plain view. After seeing this marijuana, the police were justified in searching the vehicle and arresting Peery. The motion court's order excluding the evidence is overruled.

We reverse the motion court's ruling on the motion to suppress and remand it to the motion court for proceedings consistent with our ruling today.

JAMES E. WELSH, Judge, and KAREN KING MITCHELL, Judge, concur.