Mark D. Pfeiffer, Chief Judge
Mr. Charles Barlow ("Barlow") appeals from the judgment of the Circuit Court of Daviess County ("trial court"), following a jury trial, convicting him of the class B felony of driving while intoxicated. In his sole point on appeal, Barlow argues that the trial court plainly erred in overruling *104 his motion to suppress and in admitting evidence obtained as a result of his traffic stop because the arresting officer did not have reasonable suspicion to stop Barlow's vehicle, violating Barlow's right to be free from unreasonable searches and seizures. We affirm.
Factual Background
On the evening of December 12, 2015, Deputy Tyler Miller ("Deputy Miller") of the Daviess County Sheriff's Department was working the night shift. Deputy Miller was standing outside the Corner Café in Gallatin, Missouri, talking with a group of friends, when Barlow approached the group to speak with his ex-wife. Deputy Miller noticed that Barlow had bloodshot and glassy eyes and smelled of intoxicants. He also overheard Barlow speaking and noticed Barlow's speech was slurred. Shortly thereafter, Deputy Miller observed Barlow get into the driver's seat of a vehicle, but he was unable to stop him before he drove away.
In his patrol car, Deputy Miller attempted to locate Barlow but he was unable to immediately find him. As his vehicle was almost out of gas, Deputy Miller stopped at the gas station to refuel. After leaving the gas station, approximately five to ten minutes after Deputy Miller had observed Barlow in front of the café, Deputy Miller saw Barlow drive past him. Deputy Miller immediately stopped Barlow's vehicle and again observed the same signs of intoxication he had observed in front of the café. Barlow admitted to Deputy Miller that he had been drinking but refused to take a portable breath test. Deputy Miller conducted field sobriety tests which indicated signs of intoxication. Barlow was placed under arrest and agreed to take a breath test at the police station. The breath test showed Barlow's blood alcohol content was .286 percent, over the legal limit in Missouri of .08 percent. See Section 577.012.[1]
The State charged Barlow with driving while intoxicated as a chronic offender. Prior to trial, Barlow filed a motion to suppress the evidence gathered as a result of his traffic stop. Barlow argued that the stop was not supported by reasonable suspicion, thereby violating his rights under the Fourth and Fourteenth Amendments to the United States Constitution and article I, section 15 of the Missouri Constitution. After a suppression hearing at which Deputy Miller testified, the trial court denied the motion to suppress. Barlow failed to renew his objection to the admission of the previously challenged evidence at trial. The jury found Barlow guilty, and the court sentenced him to six years of imprisonment in the Missouri Department of Corrections. Barlow failed to file a motion for a new trial but now appeals.
Analysis
In his sole point on appeal, Barlow argues the trial court plainly erred in overruling his motion to suppress and in admitting all of the evidence found as a result of his traffic stop because, under the totality of the circumstances, Deputy Miller did not have reasonable suspicion to stop Barlow's vehicle because the fact that Deputy Miller observed that Barlow had bloodshot and glassy eyes, slurred speech, and a strong odor of an intoxicating beverage was not enough to justify the traffic stop when Deputy Miller did not observe Barlow make any traffic violations before stopping him.
*105 As conceded by Barlow on appeal, his claim of error has not been preserved for appellate review as he failed to renew his objection to the challenged evidence at trial and he did not include the claim in a motion for a new trial. See State v. Lee , 498 S.W.3d 442, 447 (Mo. App. W.D. 2016) (after the denial by the trial court of a motion to suppress evidence based on allegation that the search violated the defendant's constitutional rights, "to keep the challenge preserved for appeal, the defendant must assert timely objections throughout trial and raise the issue in a motion for new trial"). A claim that is not properly preserved is reviewable only for plain error. See Rule 30.20.[2] Accordingly, Barlow's claim may only be reviewed for plain error.
Rule 30.20 authorizes this Court to review, in its discretion, "plain errors affecting substantial rights ... when the court finds that manifest injustice or miscarriage of justice has resulted therefrom." Our Supreme Court has established a threshold review to determine if a court should exercise its discretion to entertain a Rule 30.20 review of a claimed plain error. First, we determine whether or not the claimed error "facially establishes substantial grounds for believing that 'manifest injustice or miscarriage of justice has resulted[.]' " State v. Brown , 902 S.W.2d 278, 284 (Mo. banc 1995), cert. denied , 516 U.S. 1031, 116 S.Ct. 679, 133 L.Ed.2d 527 (1995) (quoting Rule 30.20). If not, we should not exercise our discretion to conduct a Rule 30.20 plain error review. If, however, we conclude that we have passed this threshold, we may proceed to review the claim under a two-step process pursuant to Rule 30.20. In the first step, we decide whether plain error has, in fact, occurred. State v. Baumruk , 280 S.W.3d 600, 607 (Mo. banc 2009), cert. denied , 558 U.S. 856, 130 S.Ct. 144, 175 L.Ed.2d 93 (2009). "All prejudicial error, however, is not plain error, and plain errors are those which are evident, obvious, and clear." Id. (citations and internal quotation marks omitted). In the absence of evident, obvious, and clear error, we should not proceed further with our plain error review. If, however, we find plain error, we must continue to the second step to consider whether or not a miscarriage of justice or manifest injustice will occur if the error is left uncorrected. Id. at 607-08.
When reviewing the trial court's overruling of a motion to suppress, th[e reviewing c]ourt considers the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's ruling. The Court defers to the trial court's determination of credibility and factual findings, inquiring only whether the decision is supported by substantial evidence, and it will be reversed only if clearly erroneous. By contrast, legal determinations of reasonable suspicion and probable cause are reviewed de novo.
State v. Marr , 499 S.W.3d 367, 372-73 (Mo. App. W.D. 2016) (internal citations and quotations omitted).
Having reviewed the record on appeal before us, we conclude that Barlow's claimed error does not facially establish substantial grounds for believing that manifest injustice or miscarriage of justice, nor that any error-plain or otherwise-has occurred.
The Fourth Amendment to the United States Constitution, which is applied to the states via the Due Process Clause of the Fourteenth Amendment, guarantees the right of the people to be secure from unreasonable searches and seizures. State v. Deck , 994 S.W.2d 527, 534 (Mo. banc 1999).
*106 Article I, section 15 of the Missouri Constitution guarantees this same right. Id. Because of these constitutional guarantees, warrantless searches and seizures are deemed per se unreasonable unless the search and seizure fits into one of a "few specifically established and well-delineated exceptions." State v. Tackett , 12 S.W.3d 332, 337 (Mo. App. W.D. 2000).
One exception to the warrant requirement is known as a " Terry stop." Id. Pursuant to this exception, police can stop and briefly detain a person for investigative purposes if the officer has a reasonable suspicion, supported by articulable facts, that criminal activity may be afoot. Terry v. Ohio , 392 U.S. 1, 30, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) ; State v. Daniels , 221 S.W.3d 438, 442 (Mo. App. S.D. 2007) (citing United States v. Sokolow , 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989) ). We have explained that:
[r]easonable suspicion, which is a less stringent standard than probable cause, is present when "a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot." [ State v. Lovelady , 432 S.W.3d 187, 191 (Mo. banc 2014) ] (internal quotation omitted). "Suspicion is reasonable if the officer is able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." Id. (internal quotation omitted). Whether reasonable suspicion exists is a question of law that we review de novo. Id. at 190.
State v. Perdomo-Paz , 471 S.W.3d 749, 760 (Mo. App. W.D. 2015). When determining whether an officer had reasonable suspicion to justify a stop, this Court must look at the totality of the circumstances known to the officer at the time of the stop. State v. Peery , 303 S.W.3d 150, 154 (Mo. App. W.D. 2010). This allows the Court both to take into account the officer's specialized training to make inference and deductions about the cumulative evidence available to him. Id. In addition, "[o]ur determination of reasonable suspicion is based on commonsense judgments and inferences about human behavior." Id.
Barlow argues that Deputy Miller did not have reasonable suspicion to justify his seizure because the traffic stop was based on observations made by Deputy Miller prior to the stop that were not related to Barlow's operation of his vehicle. Five to ten minutes before Deputy Miller stopped Barlow's vehicle, Deputy Miller observed that Barlow had bloodshot and glassy eyes, slurred speech, and smelled a strong odor of intoxicants coming from Barlow. Barlow argues that "none of these observations directly indicate any impairment on the part of [Barlow]." Barlow maintains that because Deputy Miller did not observe any traffic violations committed by him that Deputy Miller did not have reasonable suspicion sufficient to justify the stop.
Barlow's position on appeal is unsupported by the law and common sense. The crime of driving while intoxicated does not require as an element of the offense the commission of a traffic violation. The offense is committed by the act of driving while in an intoxicated condition. See § 577.010.1 ("A person commits the crime of 'driving while intoxicated' if he operates a motor vehicle while in an intoxicated or drugged condition"). Barlow has cited no authority to support his apparent assertion on appeal that Deputy Miller could not have developed a reasonable suspicion that Barlow was intoxicated unless he first observed Barlow committing a traffic violation. No such rule exists. It is true that in most cases law enforcement officers first encounter intoxicated drivers on the road and often the officer decides to stop the intoxicated persons' vehicle because she observes a traffic violation. It is then upon encountering the driver up close and making observations of the driver that the *107 officer usually develops a reasonable suspicion of intoxication.
However, in this case, Deputy Miller was first able to observe Barlow and develop a reasonable suspicion of intoxication almost immediately before Barlow entered his vehicle and began driving. "Intoxication may be proven by any witness who had a reasonable opportunity to observe the defendant's physical condition, and intoxication is usually evidenced by unsteadiness on the feet, slurred speech, lack of body coordination and impaired motor reflexes." State v. Scholl , 114 S.W.3d 304, 307 (Mo. App. E.D. 2003). Deputy Miller personally observed that Barlow had bloodshot and glassy eyes, slurred speech, and smelled of intoxicants. The observations were made five or ten minutes before the traffic stop. We find that the observations of Barlow made by Deputy Miller support the trial court's finding that Deputy Miller had reasonable suspicion to justify the stop of Barlow's vehicle.
Barlow analogizes this case to State v. Cardwell , 452 S.W.3d 263 (Mo. App. W.D. 2015), in which this Court found the officer had no reasonable suspicion to justify a stop. In Cardwell , a police officer stopped a vehicle traveling at 1:00 a.m. very slowly down a gravel road. Id. at 266. As the police officer approached from behind, the vehicle stopped and the driver waved the officer on indicating that the officer should pass him. Id. The police officer had not observed any traffic violations. Id. Rather than move on, the police officer activated his lights and approached the vehicle. Id. Upon approaching the vehicle, the officer smelled alcohol coming from the vehicle. Id. This Court held that the officer did not have reasonable suspicion to justify the stop of Cardwell's vehicle. Id. at 266-67. In so holding, this Court explained:
An objective assessment of the events leading to [the officer's] stop of Cardwell fails to reveal any specific and articulable facts and rational inferences therefrom that would reasonably warrant the stop. Driving slowly on a rural gravel road in the early morning, coming to a stop when quickly approached from behind by another vehicle, and motioning the approaching vehicle to go around with adequate room to do so does not constitute "unusual conduct" leading reasonably to a conclusion that criminal activity is taking place. There was no indication Cardwell's vehicle was in any way disabled or that Cardwell was in need of help. In fact, Cardwell waved the officer on.
Even considering all evidence and reasonable inferences in the light most favorable to the trial court's ruling, there is nothing in the record indicating that [the officer] had reasonable suspicion that illegal activity had occurred or was occurring. Circumstances that may stimulate mere curiosity are insufficient to permit an investigatory stop.
Id. Unlike Cardwell , Deputy Miller did, in fact, observe signs of intoxication from Barlow before Barlow entered his vehicle and was able to testify to specific and articulable facts that support a finding of reasonable suspicion to justify the stop.
The trial court did not err, plainly or otherwise, in admitting the evidence obtained by Deputy Miller as a result of Barlow's stop.
The point is denied.
Conclusion
The judgment of the trial court is affirmed.
Cynthia L. Martin and Edward R. Ardini, Jr., Judges, concur.

All statutory references are to the Revised Statutes of Missouri 2000, Supp. 2014, unless otherwise indicated.

All rule references are to I Missouri Court Rules-State (2017).