*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

DUSTIN ROSS ANDERSON,

Defendant-Appellee.

FOR PUBLICATION
December 23, 2025
9:10 AM

No. 369614
Livingston Circuit Court
LC No. 2023-000336-AR

Before: YATES, P.J., and BOONSTRA and YOUNG, JJ.

YOUNG, J, (*dissenting*).

I dissent because I would instead hold, as the circuit court likewise held, that this traffic stop was based on a hunch that Dustin Ross Anderson was under the influence of alcohol while operating his vehicle. As the majority acknowledges, a hunch is insufficient to rise to the level of reasonable suspicion. *People v Pagano*, 507 Mich 26, 32; 967 NW2d 590 (2021).

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On the evening of April 6, 2023, Officer Raymond Prater responded to a call regarding a "drunk person who had gotten injured." Prater and another officer reported to the home-in-question where they saw Anderson; Anderson's father was the injured individual. Anderson spoke to police at the home and "appear[ed] intoxicated." Anderson "admitted to [Prater] and [his] partner that he and his friend and his father had been drinking," and Prater observed Anderson "had some bloodshot, watery eyes, and a strong smell of intoxicants on his breath." Prater believed Anderson to be unable to safely operate a motor vehicle at the time he interacted with him at the house.

-1-

"Forty-five minutes to an hour later,"[1] Prater "observed a vehicle traveling through the village." He checked the plate on the vehicle and it was registered to Anderson.[2] Shortly thereafter, Prater conducted a traffic stop of the vehicle. Prater testified that the reason for pulling the vehicle over was three-fold: "the plate returned . . . to Mr. Anderson who we had previous contact with and showed signs of being intoxicated . . . the route he took through the village . . . and also, it appeared that he made an abrupt right-hand turn when he saw [a marked police vehicle]."

Prater later explained that what concerned him about the route through the village was the "backtracking" involved or, in other words, the route taken by the vehicle and not the operation of the vehicle. The district court found that over the course of the mile and a half the police trailed Anderson, no traffic violations were observed: "typically, we're going to hear about swerving over the lines or speed changes, things going back and forth, but at least weaving within side the lines or going over the fog line or the center line. None of that is present."

At the evidentiary hearing in the district court, the prosecutor played dash cam footage that Prater confirmed was "a fair and accurate representation of how the traffic stop went down[,]" including the preceding "abrupt turn." I will do my best to describe that footage. Prater is driving down a road where the speed limit is 25 miles per hour. The video equipment does not provide the speed at which the police car is driving, but Prater did not testify as to any speeding by Anderson. From the video alone, judging by the objects that the police vehicle is passing, neither the police car nor the vehicle it is pursuing appear to be operating at a high speed. The turn Prater described as "an abrupt right turn" features Anderson putting on his signal in advance of making the (legal) right turn, activating his brake lights, and the vehicle slowing to a near-stop before completing the turn onto a two-way side street without incident (i.e. without veering into another lane, approaching a vehicle, driving on the grass, etc.).

In other words, there was nothing clearly erroneous about the district court's factual conclusions from the video: that it saw "the turn signal go on" and did not observe "a fishtail or anything of that nature." The district court concluded, "I just don't find the abrupt right turn reasonable under these circumstances, so case is dismissed."

In a de novo review on appeal, the circuit court reached the same conclusion:

From this Court's own de novo review of the record below, without giving any deference to the lower tribunal, it is readily apparent that the stop performed by

---

[1] The district court may have incorrectly found facts related to how much earlier Prater observed Anderson: "thinking the Defendant may have been intoxicated an hour prior to—or whatever, it was roughly an hour to an hour and a half . . . ." While it seems the district court's focus was largely on the one hour, there is no record support for the hour-and-a-half conclusion. Prater's testimony was, as quoted above, 45 minutes to one hour later. I agree with the circuit court regarding this error: "[it] is a minor distinction, and does not impact that ultimate outcome of this case."

[2] I pause here to acknowledge footnote 3 in the majority opinion, with which I agree.

-2-

Officer Prater was not supported by reasonable suspicion. An hour before the stop, the Officer saw Defendant appear to be intoxicated, but did not follow up on it. The Officer even admitted on cross-examination that he was unaware of Defendant's level of intoxication when he was at his father's house around 10:39 p.m. Approximately forty-five to sixty minutes later, the Officer observed a vehicle that was registered to defendant in front of him, and so he followed it . . . . There is no evidence in the record of any civil infractions committed by defendant. No swerving, crossing the centerline, inappropriate lane changes, or the like. The Officer stopped the vehicle for making a turn, after appropriately using its signal, and after the vehicle drove a circuitous route around town. Those are not suspicious circumstances that support a reasonable and articulable basis to believe criminal activity was being committed. It is obvious from Officer Prater's testimony and the testimony of Defendant that the Officer observed Defendant to be drunk at his father's house, so the officer waited for Defendant, and followed him, looking for an excuse to pull him over. The officer had a hunch that defendant was still intoxicated when he was driving but Michigan [caselaw] is clear that a hunch is not a sufficient basis for a stop.

Reviewing the totality of the circumstances, I agree with both lower courts.

## II. ANALYSIS

The majority faults both the district court and the circuit court for largely, if not entirely, ignoring the earlier-in-the-night interaction between Prater and Anderson. The majority states that Anderson's "telltale signs of intoxication" an hour previous were "more than an inchoate or unparticularized suspicion or hunch." Because neither the turn, which was not abrupt, nor the 1.5 miles of driving in accordance with the law amounts to reasonable suspicion to conduct a traffic stop,[3] under the majority's conclusion, then, observing someone driving who has admitted to consuming alcohol approximately an hour before amounts to reasonable suspicion that an individual is driving while intoxicated. I disagree.

### A. THE MAJORITY DOES NOT CONTEMPLATE WHETHER THE BEHAVIORAL OBSERVATIONS COULD BE STALE UNDER THE CIRCUMSTANCES

A close-in-time observation is part of what makes a suspicion reasonable because, after all, it is a suspicion that "crime is *afoot*." *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996) (emphasis added). Consider a case relied on by the majority, *People v Rizzo*, 243 Mich App 151; 622 NW2d 319 (2000). In *Rizzo*, a traffic stop was conducted on the basis of a damaged rear light; all parties conceded the stop on this basis was proper. Upon approaching the driver, the officer detected a "strong odor of intoxicants." *Id*. at 153. The officer extended the stop—performed field sobriety tests and Rizzo submitted to a preliminary breath test—based on the smell of intoxicants alone. *Id*. This extension of the stop and the corresponding tests ultimately led to charges of driving while intoxicated. *Id*. at 184. The Michigan Supreme Court held that a strong

---

[3] This case lacks any of the "certain driving behaviors" that serve as "sound indicia of drunk driving." *Navarette v California*, 572 US 393, 402; 134 S Ct 1683; 188 L Ed 2d 680 (2014).

odor of intoxicants "may give rise to a reasonable suspicion that the motorist has *recently* consumed intoxicating liquor, which may have affected the motorist's ability to operate a motor vehicle." *Id.* at 161 (emphasis added).

Here, the strong smell of intoxicants and admission of drinking occurred an hour or so before the traffic stop—is that recent enough? To answer this question, unaided by Michigan caselaw on the same,[4] I found helpful, given its factual similarity, the Missouri Court of Appeals case *State v Barlow*, 543 SW3d 102 (Mo App, 2018). In *Barlow*, a deputy conducted a traffic stop on an individual who, like Anderson, had not committed any traffic violations. *Id.* at 104, 106-107. However, the deputy saw Barlow with "bloodshot and glassy eyes, slurred speech, and . . . a strong odor of intoxicants." *Id.* at 106. "The observations were made five or ten minutes before the traffic stop." *Id.* at 107. The very minimal passage of time between the observations and the traffic stop was a key factor in determining whether observations of drunkenness, without more, could be sufficient to rise to the level of reasonable suspicion of driving while intoxicated. I think observations of assumed drunkenness, occurring 45 minutes to an hour before operating a vehicle, do not rise to the level of reasonable suspicion.

And even if Prater's behavioral observations of Anderson were not stale due to the passage of time, *Barlow* is helpful for a second reason. There, the lower courts heard testimony from the deputy at a suppression hearing and believed that testimony and denied Barlow's motion to suppress. *Id.* at 104. Here, the lower court found the officer testimony, at least in part, to be incredible.

## B. THE MAJORITY DID NOT AFFORD DEFERENCE TO THE TRIAL COURT'S CREDIBILITY DETERMINATION

As the majority stated, we review a motion to suppress de novo and the lower court's findings of fact for clear error. Further, "we may not substitute our judgment for that of the trial court and make independent findings." *People v Galloway*, 259 Mich App 634, 638; 675 NW2d 883 (2003). "This Court must give deference to the trial court's factual findings, particularly where the credibility of a witness is involved." *Id*.

The only evidence that Anderson was consuming alcohol before operating his vehicle was Prater's testimony that Anderson "admitted to me and my partner that he and his friend and father had been drinking." Prater also observed "bloodshot, watery eyes and a strong smell of intoxicants

---

[4] That a tip or behavioral observation, even if accurate, can become stale is not a new concept, *United States v Payne*, 181 F3d 781, 790 (CA 6, 1999), but there is, at present, no Michigan law on what passage of time between observed alcohol consumption and observed operation of a vehicle would make the earlier consumption observation stale. This is not to say I see this area of law as a space where a bright-line rule is possible; it is not. The majority cites *Pagano* to emphasize this inquiry is fact-specific and case-by-case. I agree. Though it is worth noting that in *Pagano*, the behavioral observations were made moments before Pagano operated her vehicle and were still found to be constitutionally wanting.

on his breath." This testimony, unlike that regarding Anderson's driving, does not have corresponding objective video evidence.

Regarding Anderson's driving, Prater testified that Anderson made an "abrupt turn" when operating his vehicle and that, in part, motivated his traffic stop. Both the district court and circuit court found that observation was belied by the officer's dashcam footage.

Neither the circuit court nor the district court expressly stated how this objectively-contradicted portion of Prater's testimony affected their credibility analysis of his testimony as a whole. Nevertheless, it is clear that neither lower court found that Anderson *was* intoxicated upon his first interaction with Prater or stated that they believed Prater's observations were true. The district court described the testimony and its conclusions, in relevant part, as Prater "thinking the defendant may have been intoxicated . . . ." The circuit court read Prater's testimony as Prater seeing "defendant appear to be intoxicated" and expressly found that Prater was "unaware of defendant's level of intoxication . . . ."

The majority states that "Officer Prater's observations of defendant in a drunken state no more than one hour before the stop furnished the officer with reasonable suspicion to stop defendant's vehicle," but that conclusion requires this Court to read into the lower court record factual findings that are not there. As stated above, the lower court did not find that Anderson was intoxicated, did not expressly state anything as to the credibility of that portion of Prater's testimony, but did deem incredible a separate portion of Prater's testimony. We cannot "substitute our judgment for that of the trial court and make [our own] independent findings," *Galloway*, 259 Mich App at 638, and to the extent we cannot identify whether the district court found any of Prater's testimony credible, that is worthy of a remand, not a reversal.

### III. CONCLUSION

Reviewing the totality of the circumstances, the observations underlying Prater's traffic stop were stale and given minimal, if any, credibility by the lower court. These observations alone do not amount to reasonable suspicion, and because Prater's traffic stop of Anderson did not comply with the Fourth Amendment, I would affirm the circuit court's order.

/s/ Adrienne N. Young