**STATE of Missouri, Respondent,**

v.

**Wendell C. WRIGHT, Appellant.**

**No. WD 54083.**

Missouri Court of Appeals,
Western District.

March 31, 1998.

Motion for Rehearing and/or Transfer to
Supreme Court Denied June 2, 1998.

Application for Transfer Denied
Aug. 25, 1998.

---

Rebecca L. Kurz, Asst. Public Defender, Kansas City, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Seth A. Albin, Asst. Atty. Gen., Jefferson City, for respondent.

Before LAURA DENVIR STITH, P.J., and HANNA and RIEDERER, JJ.

RIEDERER, Judge.

Appellant, Wendell Corrie Wright, was convicted of rape and sodomy. The sole issue on appeal is whether the state's per-emptory strike of a venire person was racially motivated in violation of Appellant's right to equal protection of the law under the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Missouri Constitution. Affirmed.

## FACTS

Twenty-seven year-old Wendell Corrie Wright, met seventeen year-old Caren Borgman in Slater, Missouri during the summer of 1996. Borgman was interested in dating Wright. The first time Borgman went to Wright's house, the two drank alcohol and later engaged in sexual intercourse. After that encounter, Borgman no longer was interested in dating Wright, but she saw Wright at his house on a few more occasions without having sexual intercourse.

On July 21, 1996, Borgman met Wright and went to his house to get cigarettes. When they arrived at his house, Wright pushed her into his bedroom and forced her to engage in sexual intercourse, anal sex, and oral sex with him. After getting away, Borgman drove to Marshall to the house of her sister, Tanya Borgman. She told her sister that she had been raped, and Tanya called 911. Caren Borgman was taken by ambulance to Fitzgibbon Hospital. Dr. Jennifer Swiney examined Borgman and concluded that she had been raped, sodomized, and assaulted.

Wright was charged with forcible rape, in violation of § 566.030, RSMo 1994, and forcible sodomy in violation of § 566.060 RSMo 1994. On January 9, 1997, the case proceeded to trial. While questioning the panel of potential jurors during voir dire, defense counsel asked if anyone could understand why Wright, who is black, might be concerned that all the police officers involved in the investigation were white and why Wright might ask to speak to a black police officer. All but one of the officers who investigated the charges against Wright were white. Venire persons Alexander and Lightfoot, who are black, responded that they could understand why Wright was concerned and wanted to speak to a black officer.

The State used peremptory strikes against Alexander and Lightfoot. Defense counsel made a *Batson* challenge to the State's peremptory strikes of Alexander and Lightfoot, charging that the strikes were racially discriminatory. The prosecuting attorney explained that he struck the two venire persons because of their responses when questioned about Wright's concerns and because Alexander had never been married. The court overruled the *Batson* challenge.

The jury found Wright guilty of forcible rape and forcible sodomy. On March 5, 1997, the court sentenced Wright to concurrent terms of 26 years imprisonment on each count. Notice of Appeal was timely filed on March 14, 1997.

Although Appellant initially raised the *Batson* issue regarding two peremptory strikes, the sole issue on appeal is whether the state's peremptory strike of Venireperson Cheryl Alexander was racially motivated in violation of Appellant's right to equal protection of the law under the Fourteenth Amendment of the United States Constitution and Article I, Section 2 of the Missouri Constitution.

### STANDARD OF REVIEW

The trial court's determination that there was no purposeful discrimination in a peremptory strike is a finding of fact which should not be disturbed on appeal unless clearly erroneous. *State v. Gray*, 887 S.W.2d 369, 384, 385 (Mo. banc 1994). We find a determination to be clearly erroneous only when we have a definite and firm conviction that a mistake was made. *Id.* Because much of the decision depends upon evaluation of intangibles such as credibility and demeanor, the trial judge's determination that a peremptory strike was or was not made on racially neutral grounds is a finding of fact which is entitled to "great deference" on appeal. *State v. Antwine*, 743 S.W.2d 51, 66 (Mo. banc 1987), *cert. denied*, 486 U.S. 1017; 108 S.Ct. 1755, 100 L.Ed.2d 217 (1988).

### BATSON ISSUE

Appellant contends that the state's use of a peremptory strike against venire person Alexander was racially discriminatory and violated *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

In *State v. Parker*, 836 S.W.2d 930 (Mo. banc 1992), *cert. denied*, 506 U.S. 1014, 113 S.Ct. 636, 121 L.Ed.2d 566 (1992), the Missouri Supreme Court set out a three part test for a trial court to follow when confronted with a *Batson* challenge. "First, the defendant must raise a *Batson* challenge with regard to one or more specific venire persons struck by the state and identify the cognizable racial group to which the venireperson or persons belong." *Id.* at 939. Second, "the trial court will require the state to come forward with reasonably specific and clear race-neutral explanations for the strike." *Id.* Third, "[a]ssuming the prosecutor is able to articulate an acceptable reason for the strike, the defendant will ... need to show that the state's proffered reasons for the strikes were merely pretextual and that the strikes were racially motivated." *Id.*

The State's explanation for the strike only has to be facially race-neutral. *Purkett v. Elem*, 514 U.S. 765, 767–68, 115 S.Ct. 1769, 1770–71, 131 L.Ed.2d 834 (1995). Unless a discriminatory intent is inherent in the explanation, the court will deem the explanation race-neutral, even if it is not persuasive or even plausible. *Id.* If the prosecutor states a race-neutral reason for the strike, the burden shifts back to the defendant to show that the State's explanation was merely pretextual and that the strikes were, in fact, racially motivated. *State v. Coleman*, 949 S.W.2d 137, 145 (Mo.App.1997). If the defendant fails to challenge the State's explanation of the peremptory strike as a pretext, and simply relies on general or conclusory allegations about the State's reasoning, no effective *Batson* challenge has been made, and nothing is preserved for appeal. *State v. Mack*, 903 S.W.2d 623, 629 (Mo.App.1995).

While Appellant's trial counsel, Robert L. Fleming, questioned potential jury members, the following exchange occurred between Fleming and Venireperson Alexander:

MR. FLEMING: Is there anyone that cannot see why an individual such as Mr. Wright, in the situation that he is, who is alleged to have been involved in a sexual

offense, and the officers were predominantly white investigating it; is there anybody that cannot see that he would be concerned about that? The individual says, "Well, I don't know what that has to do with it."

In fact, we will have evidence in this case that Mr. Wright is concerned about that to the point where he asked about a specific black officer to talk to there in Slater. Anybody that just doesn't see why he would have asked for a black officer to speak about this? Anybody who can't think of a reason why he would want to talk to a black officer in this situation?

I've got one. Sometimes that's all it takes, Ms. Lightfoot, is just somebody who says you can see how he could have a problem?

And, you are Ms. Alexander.

VENIREPERSON ALEXANDER: Yes. I can understand how he would feel and wanting to talk to a black officer.

MR. FLEMING: Okay. Again, it's not to say that it's right or wrong, but the idea that he would be concerned about that and be something on his mind. And you agree with that?

VENIREPERSON LIGHTFOOT: Yes, sir.

After voir dire, the State used peremptory strikes against Alexander and Lightfoot. Defense Counsel made a *Batson* challenge to the State's peremptory strikes of Alexander and Lightfoot, charging that the strikes were racially discriminatory. Hugh Harvey, Prosecuting Attorney for Saline County, responded to Appellant's *Batson* objection by explaining the challenged strikes as follows:

MR. HARVEY: Well, part of the basis for striking both Cheryl Alexander and Pauline Lightfoot was the answer that they answered the question, the way it was phrased. As I recall that question, it was phrased whether they had a concern or could see a concern with the defendant not wanting to deal with white law enforcement only, and seeking a black officer to talk about this matter.

And my problem with that question and their responding to it, both—and I struck

both, Pauline Lightfoot and Cheryl Alexander—is because implicit within that is again a racial issue, a racial concern, because it's not taking the color or the race out of the situation; it's recognizing that. And that's what we had voir dired about, and what I'm trying to do in this case is get it out. And in this case, it's almost a reverse situation with these two parties said they could see the problem, and see a concern there. So I didn't like that.

But, conditionally, within the panel that was left, that we had to take strikes from, there are two parties in there that have been single and never married. And that is Gene Crumpacker, Number 4, and Cheryl Alexander, Number 6. And that information is available on the juror's questionnaire. We have reviewed that in advance and I have determined that I did not want individuals on this panel, on this kind of case, that have never been in a marital relationship.

It appears from the record that the State offered two explanations for its peremptory challenge of Alexander. The first appears to be concerned with race. The second is race-neutral. The trial court, recognizing the three part test, outlined above, for a trial court to follow when confronted with a *Batson* challenge, asked defense counsel: "Mr. Fleming, do you have anything further?" At that point, Appellant could have either (1) claimed the explanation was not race-neutral or (2) accepted the explanation as race-neutral and explained why it was pretextual. Appellant did neither. Instead, Appellant challenged other peremptory strikes as "non-racial but gender-based discrimination." After several minutes discussion in the record, Appellant told the court: "I don't believe—In looking at the rest of them, I don't believe we have an objection on the basis of *Batson* in either race or gender discrimination, other than those that we've identified already." Appellant never informed the court whether he accepted the explanation of the prosecutor regarding venire person Alexander or whether he claimed the explanation of the prosecutor was not race-neutral or whether he thought it was pretextual. The trial court gave Appellant every opportunity to do so, but Appellant did not challenge the State's

explanation. The trial court ruled that the strikes were not based on race or gender.

Appellant now claims on appeal that the "prosecutor's explanation of his peremptory strike against Ms. Alexander was not race-neutral." Appellant did not bring this claim to the trial court's attention. When the trial court asked, "Mr. Fleming, do you have anything further?," Appellant did not claim the explanation was not race-neutral. Appellant never brought the issue back to the court's attention.

Since Appellant did not bring to the attention of the trial court his claim that the prosecutor's explanation was not race-neutral, he failed to preserve the issue, and we hold that Appellant abandoned the issue. *See State v. Beishline,* 920 S.W.2d 622, 626 (Mo.App.1996). Appellant cannot raise this issue for the first time on appeal.

Since the issue was not preserved for appeal, we examine whether the court should have made this ruling *sua sponte.* Given the three-stage analysis prescribed by our case law, outlined above, this court will not impose upon the trial court the duty of deciding, without defense objection, that a prosecutor's explanation of a peremptory strike is not race-neutral. If Appellant believed that the prosecutor had failed to provide a race-neutral explanation, it was the duty of trial counsel to bring that to the attention of the court. This is especially so where, as here, the prosecutor offered two separate explanations.

Appellant's point is denied.

Affirmed.

All concur.