STATE of Missouri, Appellant,

v.

James D. GABBERT, Respondent.

No. WD 66350.

Missouri Court of Appeals, Western District.

Feb. 13, 2007.

David A. Baird, Maryville, MO, for appellant.

Sydney F. Weybrew, Jr., Maryville, MO, for respondent.

Before HOWARD, P.J.,
BRECKENRIDGE and HARDWICK, JJ.

PATRICIA BRECKENRIDGE, Judge.

This is an interlocutory appeal by the State from an order of the trial court suppressing all weapons seized from and statements made by James D. Gabbert during the stop and search that led to his arrest. The State asserts that the trial court erred in sustaining Mr. Gabbert's motion to suppress because Mr. Gabbert did not have standing to object to the seizure and the seizure was lawful. Specifically, the State claims that the arresting officer was not in an area protected by an expectation of privacy and, even if the initial stop was illegal, the illegality was purged when Mr. Gabbert voluntarily consented to the search of his person. This court finds that because the Fourth Amendment protects people, not places, Mr. Gabbert has standing to object to the search and seizure of his person. This court further finds that the initial seizure of Mr. Gabbert was unlawful and his subsequent consent to search was not sufficiently attenuated to purge the taint of the primary illegality. Accordingly, the order of the trial court suppressing the evidence is affirmed.

### Factual and Procedural Background

On April 29, 2005, Sergeant Jeff Von-Behren of the Maryville Department of Public Safety responded to a residence located at 311 W. 7th Street in Maryville to assist other officers in a drug investigation and "well-being check." The mother of a female juvenile reported that, after she discovered drugs in her daughter's purse, she went to 311 W. 7th Street to try and get her daughter to come home. Upon arriving at the residence, the officers pulled into a gravel driveway on the west side of the residence and parked. Officers Hoza, Davis, and McGraw proceeded to the front of the residence and Sergeant VonBehren remained on the west side. The officers made contact at the front door. Sergeant VonBehren was proceeding to the front of the residence when Officer McGraw radioed that someone had gone out the back door. Sergeant Von-Behren, along with Officer Hoza, proceeded to the rear of the residence. There, Sergeant VonBehren observed Mr. Gabbert leaning against the outside of the house with his hands in his pockets.

Sergeant VonBehren ordered Mr. Gabbert to remove his hands from his pockets and Mr. Gabbert complied. Sergeant VonBehren testified that, at that time, Mr. Gabbert was not free to leave because the officers were conducting an investigation. Sergeant VonBehren then asked Mr. Gabbert to consent to a pat down search of his person. Mr. Gabbert consented and, without being asked to do so, turned and put his hands on the house. Sergeant VonBehren located a pocketknife in Mr. Gabbert's front pocket and, as he was taking the knife, Mr. Gabbert told him that there was another knife down inside of his sock. Sergeant VonBehren was not able to see the knife, but recovered it from the sock on the inside of Mr. Gabbert's right leg. The knife was contained in a sheath with wrapping around the handle. Mr. Gabbert was then arrested, handcuffed, and taken to the department of public safety. Sergeant VonBehren did not read Mr. Gabbert his *Miranda*[1] rights. At the department of public safety, Mr. Gabbert told Sergeant VonBehren that he did not live at 311 W. 7th Street and that he was in-between places.

On August 11, 2005, the State charged Mr. Gabbert by information with unlawful use of a weapon, in violation of section 571.030.1(1), RSMo Cum.Supp.2005.[2] Mr. Gabbert filed a motion to suppress all physical evidence and any statements made by him prior to or subsequent to his arrest on April 29, 2005. The motion was heard on December 12, 2005, and the trial court issued its findings of fact and conclusions of law and order on December 20, 2005, suppressing all evidence and statements obtained from Mr. Gabbert as a result of the stop and search on April 29, 2005. Specifically, the trial court found that because Mr. Gabbert was not in a public place when the police approached him and there was no reasonably articulable reason for the stop, the court found that the stop was improper and any information obtained as a result of the stop, even though it was obtained through a search to which Mr. Gabbert consented, was illegally obtained and subject to suppression. The State filed this interlocutory appeal.

## Standard of Review

 A trial court's order suppressing evidence is entitled to interlocutory appeal under section 547.200.1, RSMo 2000. *State v. Wilson,* 169 S.W.3d 870, 875 (Mo. App. W.D.2005). This court's review of a trial court's order on a motion to suppress evidence is limited to determining whether the decision is supported by substantial evidence. *Id.* This court will reverse only if the order of the trial court is clearly erroneous. *Id.* An order of the trial court is clearly erroneous if this court is left with a definite and firm impression that a mistake has been made. *Id.* This court views all of the facts and reasonable inferences therefrom in the light most favorable to the order of the trial court and disregards all contrary evidence and inferences. *Id.* However, " '[w]hether the Fourth Amendment has been violated is a legal question which this court reviews *de novo.*' " *State v. Mosby,* 94 S.W.3d 410, 415 (Mo.App. W.D.2003) (citation omitted).

## No Error in Suppressing Evidence and Statements

 In the State's sole point on appeal, the State asserts that the trial court erred in sustaining Mr. Gabbert's motion to sup-

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

2. All statutory references are to the 2005 Cumulative Supplement to the Revised Statutes of Missouri 2000, unless otherwise indicated.

press because Mr. Gabbert did not have standing to object to the seizure and that the seizure was lawful. Specifically, the State contends that Mr. Gabbert has no more standing to assert a violation of his Fourth Amendment rights than would be granted to a passenger in a vehicle owned by another because Mr. Gabbert did not have a legitimate expectation of privacy in the rear yard because it was not his residence. The State also contends that, even if the initial stop was illegal, the illegality was purged when Mr. Gabbert voluntarily consented to the search of his person.

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Article 1, section 15 of the Missouri Constitution is coextensive with the Fourth Amendment. *State v. Jackson*, 186 S.W.3d 873, 879 (Mo. App. W.D.2006). An individual aggrieved by an unlawful seizure may file a motion to suppress evidence that is the product of an unlawful search and seizure. *Mosby*, 94 S.W.3d at 415. The State then has the burden to show, by a preponderance of the evidence, that the evidence should not be suppressed. *Id.*

The State claims that Mr. Gabbert did not have standing to object to the seizure because Mr. Gabbert did not have a legitimate expectation of privacy in the rear yard of the residence of a third party. In order for a defendant to have standing to assert a violation of his Fourth Amendment rights, the defendant must have a legitimate expectation of privacy in the place or thing searched. *Id.* The State is correct in its assertion that "[a] person who is aggrieved by an illegal search and seizure only through the introduction of physical evidence secured by the search of a *third person's premises or property* has

not had an infringement of Fourth Amendment rights." *State v. Clark*, 729 S.W.2d 579, 584 (Mo.App. E.D.1987). However, the focus of the State's inquiry is misplaced. The question is not whether Mr. Gabbert has standing to object to the introduction of evidence secured by a search of a third person's premises or property. Rather, the question is whether Mr. Gabbert has standing to object to a search and seizure of his person.

"The Fourth Amendment protects people, not places." *State v. Corpier*, 793 S.W.2d 430, 437 (Mo.App. W.D.1990) (citing *Katz v. United States*, 389 U.S. 347, 351, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967)). "Thus[,] the focus should not be on the area[,] but rather the defendant's actual expectation of privacy and the reasonableness of such." *Id.* Because "the Fourth Amendment is a personal right that must be invoked by an individual," *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998), it follows that an individual may always challenge the legality of a search and seizure of his person. Mr. Gabbert, not the residence of the third party, was the subject of the search and seizure. Therefore, Mr. Gabbert has standing to object to the search and seizure of his person.

The State claims that even if Mr. Gabbert has standing to object to the search and seizure, Mr. Gabbert's pre-arrest encounter with Sergeant VonBehren was not an unlawful seizure. Specifically, the State claims because. Sergeant Von-Behren did not use any physical force or assert any police authority, Mr. Gabbert was not seized for purposes of the Fourth Amendment. Not all encounters between the police and private citizens constitute a seizure. *State v. Stacy*, 121 S.W.3d 328, 332 (Mo.App. W.D.2003). A seizure occurs only when an individual is subject to the

application of physical force or voluntarily submits to the assertion of police authority. *Id.* In determining whether a police encounter constitutes a seizure, a court must examine all of the circumstances surrounding the encounter to determine whether the officer's conduct would have communicated to a reasonable person that he was not free to leave. *Id.* Although not exclusive, factors indicating a seizure has occurred are: "'the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled.'" *Id.* (citation omitted).

Here, in its findings of fact, the trial court found that Sergeant VonBehren, *upon encountering Mr. Gabbert in the rear yard, ordered him to take his hands out of his pockets.* Sergeant VonBehren then asked Mr. Gabbert if he could search him and Mr. Gabbert consented. At the hearing on the motion to suppress, Sergeant VonBehren testified that Mr. Gabbert was not free to leave because he and another officer were conducting an investigation. The court further found that Mr. Gabbert, without being told to do so, turned and placed his hands upon the side of the house. While the pat down search was being conducted, Mr. Gabbert told Sergeant VonBehren that he had a knife in his boot.

■ Because Mr. Gabbert voluntarily submitted to the assertion of Sergeant VonBehren's authority, the evidence supports a finding that he was seized. Sergeant VonBehren did not make any introductory remarks upon encountering Mr. Gabbert. Rather, Sergeant VonBehren's first words with Mr. Gabbert were to order him to remove his hands from his pockets. Sergeant VonBehren characterized his request as an order rather than merely asking him to remove his hands. Thus, Sergeant VonBehren's use of language and tone of voice indicated to Mr. Gabbert that compliance with his request was mandatory. Moreover, evidence that Mr. Gabbert turned and placed his hands on the house, without being asked to do so, supports the trial court's finding that Mr. Gabbert did not feel free to decline Sergeant VonBehren's request or terminate the encounter. The totality of the circumstances indicates that Mr. Gabbert was seized because he voluntarily submitted to Sergeant VonBehren's authority.

■ The circuit court also found that Sergeant VonBehren failed to articulate any reasonable grounds for detaining Mr. Gabbert. "A person may not be detained even momentarily ... without reasonable, objective grounds for doing so." *State v. Talbert,* 873 S.W.2d 321, 323 (Mo. App. S.D.1994) (citing *Florida v. Royer,* 460 U.S. 491, 498, 103 S.Ct. 1319, 75 L.Ed.2d 229 (1983)). Sergeant VonBehren testified that when he saw Mr. Gabbert he was not fleeing and there was nothing to indicate that he was using drugs. Nor was any evidence presented that there was a risk of danger to or from a person inside or outside the building. Because Sergeant VonBehren failed to articulate any reasonable, objective grounds for the detention of Mr. Gabbert, and Mr. Gabbert voluntarily submitted to the assertion of Sergeant VonBehren's authority, the stop of Mr. Gabbert constituted an unlawful seizure.

■ Finally, the State asserts that even if the initial stop was illegal, the illegality was purged when Mr. Gabbert voluntarily consented to the search of his person. "Generally, evidence discovered and later found to be derivative of a Fourth Amendment violation must be excluded as fruit of the poisonous tree." *State v. Miller,* 894 S.W.2d 649, 654 (Mo. banc 1995). However, not all evidence is

considered fruit of the poisonous tree. *Id.* In determining whether evidence should be excluded as fruit of the poisonous tree, "the question is 'whether, granting establishment of the primary illegality, the evidence to which . . . objection is made has been come at by exploitation of the illegality or instead by means sufficiently distinguishable to be purged of the primary taint.'" *Id.* at 654 (citations omitted). The means by which the primary taint is purged are the attenuation doctrine, the independent source rule, and the inevitable discovery rule. *Id.* at 654 n. 5. In this case, the attenuation doctrine is applicable.

▮ Under the attenuation doctrine, the State must meet the "dual requirement" of proving that the consent is voluntary and that it is sufficiently independent from the primary illegality to purge the taint of that illegality. *Id.* at 655 (citations omitted). Under this "dual requirement," even if the consent is voluntary, the court must determine whether the consent is sufficiently independent from the initial illegality to purge the taint of that illegality. *Id.* In making that determination, the court should consider the following factors: "(1) the temporal proximity of the illegality and the [consent]; (2) the presence of intervening circumstances; and (3) the purpose and flagrancy of the official misconduct." *Id.*

Here, the trial court found that the stop of Mr. Gabbert was not proper. Thus, the trial court concluded that "any information obtained as a result of the stop, even though it was obtained through a search to which [Mr. Gabbert] consented, was illegally obtained and, therefore, subject to suppression." Although the trial court found that Mr. Gabbert consented to the search of his person, it made no finding as to whether the consent was voluntary.

This court also need not determine whether the consent was voluntary be-cause even assuming, *arguendo*, that the consent was voluntary, the State has failed to show that the search was sufficiently independent from the illegal stop to purge the taint of that illegality. *Miller*, 894 S.W.2d at 655. Specifically, there was no significant temporal distance between the illegal stop and Mr. Gabbert's consent. *Id.* The consent was given immediately after the illegal stop. There is no evidence of any intervening circumstances between the illegal stop and the consent. *Id.* Finally, while there is no evidence of police misconduct rising to the level of flagrancy, "the absence of purposeful and flagrant misconduct cannot alone dissipate the taint in the complete absence of temporal distance and intervening circumstances." *Id.* at 656. Therefore, even assuming that Mr. Gabbert voluntarily consented to the search of his person, the State has failed to purge the taint of the prior illegality.

The trial court's judgment granting Mr. Gabbert's motion to suppress is affirmed.

All concur.