STATE of Missouri, Respondent,

v.

Lavell E. NYLON, Appellant.

No. ED 92172.

Missouri Court of Appeals,
Eastern District,
Division One.

March 30, 2010.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 12, 2010.

Application for Transfer Denied
June 29, 2010.

Jessica Hathaway, MO Public Defenders Office, St. Louis, MO, for appellant.

Shaun Mackelprang, Richard Starnes, Co–Counsel, Jefferson City, MO, for respondent.

Before KATHIANNE KNAUP CRANE, P.J., CLIFFORD H. AHRENS, J., and NANNETTE A. BAKER, J.

NANNETTE A. BAKER, Judge.

### Introduction

Lavell Nylon ("Defendant") appeals from the judgment entered upon a jury verdict convicting Defendant of drug trafficking in the second degree and resisting arrest. The trial court sentenced Defendant as a prior and persistent offender to consecutive terms of fifteen years for the drug offense and five years for resisting arrest. On appeal, Defendant claims the trial court erred in denying his motion for judgment of acquittal for the crime of resisting arrest, in overruling his *Batson*[1] challenges, and in denying his motions to suppress drug evidence and his statements to the police. We affirm in part and reverse in part.

After Defendant filed this appeal, he filed a "Motion for Remand to the Trial Court for Reconsideration of Appellant's Suppression Motions and/or New Trial Motion in Light of Newly Discovered Evidence" ("motion to remand"). Defendant has moved this Court to remand his case to the trial court because he claims the trial court should be able to consider newly discovered evidence regarding the credibility of the State's key witnesses against Defendant. This motion is denied.

### Background

This Court reviews the facts in the light most favorable to the verdict. *State v.*

---

**1.** *Batson v. Kentucky,* 476 U.S. 79, 86, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1987).

*Barriner*, 111 S.W.3d 396, 397 (Mo. banc 2003). On January 7, 2007, an anonymous person approached City of St. Louis Police Officers Shell Sharp and Mike Mathews and reported that an older black male with braids and a brown jacket was selling narcotics. The officers went to the location described by the tipster and saw Defendant, who was huddled with another man in conversation. Defendant matched the tipster's description of the man selling drugs. The police officers approached the men, who immediately separated and walked away in different directions. Defendant also put his right hand into his pants pocket. Officer Mathews ordered Defendant to remove his hand from his pocket. Defendant took a step backward, turned and began to walk away briskly. Officer Mathews followed Defendant and again instructed him to take his hand out of his pocket. Defendant then slipped in a mud hole and fell to the ground. Defendant removed his hand from his pocket to brace his fall, and when he hit the ground, a plastic bag containing numerous smaller bags fell to the ground. Officer Mathews believed the plastic bags contained crack cocaine, and later testing confirmed that the bag contained 5.11 grams of a substance with a crack cocaine base.

After falling, Defendant attempted to stand up, but Officer Mathews told him to stop and that he was under arrest. Officer Mathews grabbed Defendant, and both men fell into the mud. Defendant attempted to crawl away, but Officer Sharp came to Officer Mathews's assistance and placed Defendant under arrest. After the police read Defendant his *Miranda*[2] rights, Defendant told the officers that he would cooperate and would provide them with information on other narcotic dealers if the officers would give him a break.

Defendant was charged as a prior and persistent offender with drug trafficking in the second degree in violation of Section 195.223[3] and resisting arrest in violation of Section 575.150 RSMo. (Supp.2005). During jury selection, the State used five of its six peremptory strikes on African–Americans, including venirepersons Britt, Watson and Cobb. Defendant objected to all five strikes based on *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). The State responded that it struck venirepersons Britt and Watson because they lived in the area where the arrest occurred. The State also argued that two white venirepersons, Peterson and Staum, who also lived in the same area, were distinguishable from the struck African–American venirepersons. The State claimed that venirepersons Peterson and Staum were pro-State, and the State assumed Defendant would use his peremptory strikes on them. The State argued that it struck Venireperson Cobb because "she worked in a casino, so she works in the same industry." The State did not explain who else worked in a casino. The trial court overruled Defendant's *Batson* challenges.

Defendant filed motions to suppress the seized drug evidence and his statements to the police because Defendant claimed that the police lacked reasonable suspicion to approach him. The trial court ordered the motion to suppress the drug evidence to be taken with the case. Officer Mathews and Defendant testified at an evidentiary hearing on the motion to suppress the statements. The trial court found Officer Mathews's account of the arrest credible and denied the motion.

At trial on April 16, 2008, officers Sharp and Mathews and the criminologist who

---

**2.** *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

**3.** All statutory references are to RSMo.2000, unless otherwise indicated.

tested the crack cocaine testified on behalf of the State. The State also admitted into evidence an evidence envelope, the bag of crack cocaine and a lab analysis report. When the State moved to admit the evidence envelope and the crack cocaine, Defendant stated that he had no objection to their admission. Furthermore, Defendant did not reassert his motion to suppress the drug evidence. The trial court denied the motion to suppress after hearing the evidence in the case. Defendant failed to object when Officer Sharp testified regarding Defendant's post-arrest statements but did object to Officer Mathews's testimony regarding the same statements. Defendant did not present any evidence at trial, and the jury found Defendant guilty. On May 1, 2008, Defendant timely filed a motion for new trial, which was denied. On May 23, 2008, Defendant was sentenced to consecutive terms of fifteen years for the drug offense and five years for resisting arrest. Defendant filed this appeal and oral arguments were conducted on December 8, 2009.

On December 4, 2009, Defendant filed the motion to remand with this Court. Defendant moves this Court to remand Defendant's case to the trial court so Defendant can amend his motion for new trial and so that the trial court can reconsider Defendant's motions to suppress in light of newly discovered evidence. The State opposes the motion to remand. The newly discovered evidence consists of multiple articles published in the ST. LOUIS POST-DISPATCH. The articles detailed serious issues in the City of St. Louis Police Department regarding police officers allegedly fabricating statements by confidential informants to support applications for search and arrest warrants.[4]

The articles included information that the St. Louis Circuit Attorney's Office declined to prosecute numerous cases involving Officer Sharp's testimony because his testimony was no longer reliable and that he had been accused of lying on search warrant applications. Specifically, Officer Sharp had listed either a dead person or a person in jail as one of his confidential informants. The reports also stated that the St. Louis Circuit Attorney had lost confidence in Officer Mathews as a witness. In an affidavit filed as part of a warrant application, Officer Mathews had stated that he conducted surveillance on April 1, 2008, but records show that he was off duty at the time. As a result, the Circuit Attorney dismissed charges against the subject of the surveillance and was in the process of reviewing other cases involving Officer Mathews. The reports concerned cases in 2008 and 2009 and did not include any allegations of misconduct by officers Sharp and Mathews related to their testimony in Defendant's case.

When Defendant filed his motion to remand, the Missouri Supreme Court had before it a case involving a motion to remand because of newly discovered evidence. *State v. Terry*, 304 S.W.3d 105 (Mo. banc 2010). This Court withdrew Defendant's appeal from consideration pending the Supreme Court's decision in *Terry*. After the Supreme Court issued its opinion in *Terry*, this case was resubmitted for consideration.

### Discussion

#### Motion to Remand for Newly Discovered Evidence

We will first address Defendant's motion to remand on the basis of the newly dis-

---

4. Robert Patrick, *City Officer Impugned; Drug Case Dismissed*, ST. LOUIS POST-DISPATCH, Dec. 1, 2009, at A1; Heather Ratcliffe, *Officers Named 1 Dead, 1 Jailed as Informers*, ST. LOUIS POST-DISPATCH, Aug. 29, 2009, at A4; Robert Patrick & Heather Ratcliffe, *Confidential Informers Spur Inquiry*, ST. LOUIS POST-DISPATCH, Aug. 19, 2009, at A1.

covered evidence. Defendant filed his motion to remand because newly discovered evidence exists that the police officers involved in this incident have serious credibility issues that came to light after Defendant's trial. He argues the trial court should be able to consider this evidence in ruling on Defendant's motions to suppress and motion for a new trial because the evidence seriously harms the credibility of the State's two crucial witnesses.

██ Defendant's motion to remand, however, does not satisfy the time limits for filing a motion for a new trial under Rule 29.11(b)[5] because it was filed more than twenty-five days after the jury returned its verdict.[6] The Missouri rules do not provide a means to order the granting of a new trial for newly discovered evidence outside of the time limits imposed by Rule 29.11. *Terry*, 304 S.W.3d at 107–09. Despite the lack of a provision in the rules, this Court has the "responsibility to avoid a 'perversion of justice.'" *Terry*, 304 S.W.3d at 110 (quoting *State v. Williams*, 673 S.W.2d 847, 848 (Mo.App. E.D.1984)). Appellate courts also "have the inherent power to prevent miscarriages of justices" in certain cases of newly discovered evidence. *State v. Mooney*, 670 S.W.2d 510, 515–16 (Mo.App. E.D.1984). To exercise this power, the appellate court may, in limited circumstances, dismiss the appeal and remand the case to the trial court to allow the appellant to file an amended motion for new trial. *Terry*, 304 S.W.3d at 111–12. The exercise of this power, however, remains in the discretion of the appellate court. *Id.*; *State v. Parker*, 208 S.W.3d 331, 335 (Mo.App. S.D. 2006). For this Court to grant the motion to remand, Defendant must ordinarily show:

1. The facts constituting the newly discovered evidence have come to the movant's knowledge after the end of the trial;

2. Movant's lack of prior knowledge is not owing to any want of due diligence on his part;

3. The evidence is so material that it is likely to produce a differen[t] result at a new trial; and

4. The evidence is neither cumulative only nor merely of an impeaching nature.

*Terry*, 304 S.W.3d at 109 (citing *State v. Whitfield*, 939 S.W.2d 361, 367 (Mo. banc 1997)).

Faced with newly discovered evidence, courts have often required that the newly discovered evidence would actually exonerate the defendant and not merely impeach a witness's credibility. *See, e.g., State v. Dunmore*, 227 S.W.3d 524, 526 (Mo.App. W.D.2007); *Parker*, 208 S.W.3d at 334; *State v. Smith*, 181 S.W.3d 634, 638 (Mo. App. E.D.2006). The Missouri Supreme Court in *Terry*, however, noted that there may be an exceptional circumstance "where impeachment is reason to remand to the trial court to grant a new trial at the appellate court's discretion." *Terry*, 304 S.W.3d at 110 (citing *Mooney*, 670 S.W.2d at 516).

Missouri courts applying these standards have reversed in only three cases. In *Williams*, the evidence would have completely exonerated the movant if believed, and the State agreed with the movant that the case should be returned to the trial court. *Williams*, 673 S.W.2d at 847–48. This Court granted the motion, dismissed the appeal and remanded the case to the

---

5. All rule references are to Mo. Sup.Ct. R. (2009), unless otherwise indicated.

6. The trial court granted Defendant additional time to complete his motion for new trial consistent with Rule 29.11(b).

trial court. *Id.* In granting the motion, we noted that "[u]nder the unique circumstances of this case, we are willing to overlook the time constraints of Rule 29.11 as they relate to the newly discovered evidence." *Id.* at 848.

In *Mooney,* the defendant had been convicted of molestation of a minor. 670 S.W.2d at 511. At trial, the alleged victim was the only person who testified to the molestation. *Id.* Six months after the hearing on the defendant's motion for a new trial, the alleged victim was taped admitting that he made up the story and that his trial testimony was false. *Id.* The defendant filed a motion with this Court to allow the newly discovered evidence to be considered. *Id.* This Court noted that "in a case of this kind appellant must have some forum in the judicial system to present this issue, particularly where the case is still in the process of appeal." *Id.* at 515. This Court determined that the facts of the case were a special situation because the only witness who testified about the essential facts of the crime had recanted after the time period for a motion for a new trial had lapsed. *Id.* at 515–16. In such a situation, this Court held that it had the "inherent power to prevent miscarriages of justice" and remanded the case to the trial court to allow the defendant to file a motion for a new trial based on the newly discovered evidence. *Id.*

Finally, the Missouri Supreme Court in *Terry,* the case for which this appeal was withdrawn, addressed a motion to remand based on newly discovered evidence. *Terry,* 304 S.W.3d at 106–07. In *Terry,* the defendant had been convicted of first degree statutory rape. *Id.* The conviction was based largely on the testimony of the alleged victim. *Id.* The alleged victim was pregnant at the time of the trial and testified that only the defendant could be the father because she had not had sex with anyone else. *Id.* The prosecutor frequently emphasized that the alleged victim was pregnant and that the defendant was the father of the child. *Id.* However, the alleged victim gave birth after trial, and a DNA test, performed after the time period for a motion for a new trial had already lapsed, found a zero percent probability that the defendant was the father. *Id.* at 107–09. The Court granted the motion to remand and dismissed the appeal. *Id.* at 111–12.

In granting the motion, the Court stated that "newly discovered evidence during an appeal usually is not enough for a new trial, but here, the newly discovered forensic evidence, if verified, appears to be central to the case and shows that [the defendant] was convicted with the aid of false testimony from the alleged victim." *Id.* The Court held that the newly discovered DNA evidence satisfied the four requirements established in *Whitfield:* the evidence was not discovered until after trial; the evidence was not discoverable until after trial; the evidence was material, and it was not merely impeachment evidence. *Id.* at 109–10; *Whitfield,* 939 S.W.2d at 367. Although the evidence did not completely exonerate the defendant, it was sufficient that the evidence showed that the victim perjured herself. *Id.* at 105–10. The Court stated that although the jury generally weighs the effect of impeachment evidence, the jury has nothing to weigh in cases of perjury, and therefore, the evidence was not merely impeachment evidence. *Id.* at 109–10. The Court, however, did comment on *Mooney* and noted that *Mooney* represents a special circumstance where even mere impeachment evidence can support remand. *Id.*

In this case, the POST-DISPATCH articles state that the St. Louis Circuit Attorney's Office dropped charges in cases involving officers Sharp and Mathews because of

concerns about the reliability of the officers' testimony and statements made in warrant applications. The articles specifically allege that both officers have lied in warrant applications. The articles do not include any allegations related to the instant case and are based on incidents that occurred after Defendant's arrest.

Defendant can establish the first two elements discussed in *Terry* because of the timing of the conduct discussed in the articles. The facts constituting the newly discovered evidence did not come to the attention of Defendant before the end of the trial because the articles were not published and the Circuit Attorney's Office apparently did not stop using the officers' testimony until after Defendant's trial. In addition, Defendant did not fail to exercise due diligence by failing to know of this conduct because the articles had not yet been published. Defendant could not have known of the future actions of the Circuit Attorney's Office at the time of his trial. Turning to the third element, the State's case was based entirely on the testimony of officers Sharp and Mathews. Evidence that the officers' credibility has been eviscerated to the extent that the St. Louis Circuit Attorney's Office dismissed cases involving their testimony could have a dramatic effect on the jury's weighing of the testimony in this case.

The final element, however, does not support granting Defendant's motion to remand. The newly discovered evidence in this case would only impeach the credibility of Officers Sharp and Mathews. The articles do not include any allegation that the officers fabricated their testimony in the present case or any allegations of misconduct at the time of Defendant's arrest. Unlike in *Williams*, the evidence's only use would be to attack the credibility of the officers for their later-in-time fabrica-

tions, and the State opposes the motion. 673 S.W.2d at 847–48.

Although a motion for remand on the basis of impeachment evidence may be granted in light of *Mooney* and *Terry*, the circumstances of this case are readily distinguishable and do not support the exercise of our discretion to grant the motion to remand. *Mooney* involved the taped recantation of the alleged victim's testimony. 670 S.W.2d at 512. In *Terry*, the newly discovered evidence consisted of forensic evidence that, if verified, would conclusively show that the alleged victim had perjured herself. *Terry*, 304 S.W.3d at 109–10. Though the newly discovered evidence in this case does have considerable impeachment value, it does not rise to the level of the evidence in either *Mooney* or *Terry*. There has not been any showing that the newly discovered evidence has any relation to the facts of this case beyond its impeachment value. There is no evidence that the officers fabricated their testimony in this case. Therefore, we find that the circumstances of this case do not support the exercise of our discretion in granting the extraordinary remedy of remanding this case to the trial court. The motion is denied.

### Points on Appeal

We will now address Defendant's four points on appeal. In his first point, Defendant claims that the trial court erred in denying his motion for judgment of acquittal at the close of evidence, in entering judgment on the jury's verdict and in sentencing him for the crime of resisting arrest because the State presented no evidence that he resisted arrest by fleeing from the officers. In his second and third points, Defendant alleges the trial court erred in overruling his *Batson* challenges because the State's proffered reasons for the strikes were pretextual. In his final point, he argues the trial court erred in

denying his motion to suppress because the officers lacked reasonable suspicion to approach and seize Defendant.

### Resisting Arrest

■ In his first point on appeal, Defendant claims the trial court erred in overruling his motion for judgment of acquittal, in entering judgment on the jury's verdict of guilty and in sentencing Defendant to five years' imprisonment for the count of resisting arrest. Specifically, Defendant argues that the State presented no evidence to prove Defendant "resisted by fleeing from the officers" as required under the statute and the applicable jury instruction. We agree.

"We will affirm a trial court's denial of a motion for judgment of acquittal if, at the close of evidence, there was sufficient evidence from which reasonable persons could have found the defendant guilty of the charged offense." *State v. Edwards,* 280 S.W.3d 184, 189 (Mo.App. E.D.2009) (internal citations omitted). In determining if the State presented sufficient evidence, we view the evidence in the light most favorable to the verdict and grant all reasonable inferences that may be drawn therefrom. *State v. Agnew,* 214 S.W.3d 398, 400 (Mo.App. E.D.2007). We also disregard all contrary evidence and inferences. *Id.*

Section 575.150.1 provides that a person commits the crime of resisting arrest if he or she knows or reasonably should have known that a law enforcement officer is making an arrest, and the person, for the purpose of preventing the officer from effecting the arrest, "resists the arrest ... by using or threatening the use of violence or physical force or by fleeing from such officer." Section 575.150.1(1) RSMo. (Supp.2005). A person can resist arrest either by using or threatening to use physical violence or physical force, or by fleeing. *Id.* In this case, the State elected to

charge Defendant with resisting arrest by fleeing. The trial court submitted the following jury instruction based on MAI CR3d 329.60 to the jury for the resisting arrest count:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about January 7, 2007, in the State of Missouri,

Michael Mathews was a law enforcement officer, and

Second, that Michael Mathews was making an arrest of the

defendant for possession of controlled substance, and

Third, that the defendant knew or reasonably should have known that a law enforcement officer was making an arrest of the defendant, and

Fourth, that for the purpose of preventing the law enforcement officer from making the arrest, the defendant resisted by fleeing from the officer,

then you will find the defendant guilty under Count II of resisting arrest.

However, unless you find and believe from the evidence beyond a reasonable doubt each and all of these propositions, you must find the defendant not guilty of that offense.

Defendant only challenges the sufficiency of the evidence as to the fourth element, whether the State produced sufficient evidence that "the defendant resisted by fleeing from the officer[.]" Neither MAI CR3d 329.60 nor Section 575.150 defines "flee." Absent a statutory definition, we give the words in a statute their plain and ordinary meaning as derived from a dictionary. *State v. Payne,* 250 S.W.3d 815, 820 (Mo.App. W.D.2008) (citing *Columbia Athletic Club v. Dir. of Revenue,* 961 S.W.2d 806, 809 (Mo. banc 1998)). The American Heritage Dictionary defines "flee" as "to

run away, as from trouble or danger," "to pass swiftly away," "vanish" or "to run away from." The American Heritage Dictionary of the English Language 672 (4th ed.2006).

In this case, the State alleged that Defendant resisted arrest when after falling in a mud hole he attempted to crawl away from Officer Mathews. To support this charge, Officer Mathews testified that he grabbed Defendant as Defendant attempted to get out of the mud hole and continued to hold him as both Defendant and Officer Mathews fell to the ground. Officer Mathews testified that: "[Defendant] attempted to crawl away from me, I still had a hold of him, and I yelled out to him stop, stop moving, stop resisting, you're under arrest." Officer Sharp testified that as he went to assist Officer Mathews in making the arrest, Defendant was "trying to get away" and was "trying to ... crawl away."

Since the State charged Defendant with resisting arrest by fleeing, it had to prove that Defendant actually fled consistent with the plain and ordinary meaning of the word "flee" because there is no statutory definition. The State's evidence merely established that Defendant attempted to crawl away but that Officer Mathews maintained his grasp of Defendant. This was insufficient to show that Defendant "ran away" or "passed swiftly away." Based only on this testimony, the jury could not make a reasonable inference that Defendant fled by only attempting to crawl away. Although we view the evidence in the light most favorable to the verdict and grant all reasonable inferences therefrom, there was insufficient evidence from which a reasonable juror could have concluded that Defendant resisted arrest by fleeing. Point granted.

We reverse the judgment of the trial court and vacate Defendant's conviction and sentence on the resisting arrest count.

### Batson Challenges

In his second and third points on appeal, Defendant claims that the trial court clearly erred in overruling his objections to the State's exercise of its peremptory strikes against multiple African–American venirepersons. Defendant argues that the State's strikes of venirepersons Britt, Watson and Cobb violated Batson because the State's reasons for the strikes were pretextual. Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). We disagree.

We review the trial court's denial of a Batson challenge for clear error. State v. Johnson, 284 S.W.3d 561, 571 (Mo. banc 2009). When reviewing for clear error, this Court will not reverse the trial court's decision unless after a review of the entire evidence, we are left with the definite and firm conviction that a mistake was made. State v. McFadden, 216 S.W.3d 673, 675 (Mo. banc 2007); State v. Hopkins, 140 S.W.3d 143, 148 (Mo.App. E.D. 2004). In making this determination, we accord the trial court "great deference because its findings of fact largely depend on its evaluation of credibility and demeanor." Kesler–Ferguson v. Hy–Vee, Inc., 271 S.W.3d 556, 558 (Mo. banc 2008); see also State v. Gray, 887 S.W.2d 369, 384 (Mo. banc 1994).

"Under the Equal Protection Clause, a party may not exercise a peremptory challenge to remove a potential juror solely on the basis of the juror's gender, ethnic origin or race." State v. Marlowe, 89 S.W.3d 464, 468 (Mo. banc 2002). A party objects to such a strike by making a Batson challenge, which has three steps. Batson, 476 U.S. 79, 106 S.Ct. 1712; Johnson, 284 S.W.3d at 571.

In the first step of a *Batson* challenge, the defendant must object to the State's peremptory strike of one or more specific venire persons as being for an improper purpose. *Johnson*, 284 S.W.3d at 571. The State must then come forward with a race-neutral reason for the strike "that is more than an unsubstantiated denial of discriminatory purpose." *McFadden*, 216 S.W.3d at 675. This explanation is "deemed race-neutral unless a discriminatory intent is inherent in the prosecutor's explanation, even if that explanation has a disparate impact on minority venirepersons." *Marlowe*, 89 S.W.3d at 468.

If the State can articulate an acceptable reason, the burden shifts to the defendant to show that the State's proffered reasons are merely pretextual and that the strike was racially motivated. *McFadden*, 216 S.W.3d at 675; *State v. Hampton*, 163 S.W.3d 903, 904 (Mo. banc 2005). "In determining pretext, the main consideration is the plausibility of the prosecutor's explanations in light of the totality of the facts and circumstances surrounding the case." *State v. Johnson*, 207 S.W.3d 24, 35 (Mo. banc 2006). The trial court should consider "whether the explanation is (1) race-neutral, (2) related to the case to be tried, (3) clear and reasonably specific, (4) legitimate." *McFadden*, 216 S.W.3d at 676. The existence of similarly situated white jurors who were not struck is a crucial factor. *Marlowe*, 89 S.W.3d at 469. An identical comparison is not necessary, as "a per se rule that a defendant cannot win a *Batson* claim unless there is an exactly identical white juror would leave *Batson* inoperable." *McFadden*, 216 S.W.3d at 676.

Defendant challenged five of the State's peremptory strikes but has only appealed the trial court's denial of the challenges for venirepersons Britt, Watson and Cobb. After Defendant challenged the State's strikes, the trial court asked the State for its race-neutral reasons for exercising each of the challenged strikes. The State responded that it struck venirepersons Britt and Watson because they lived in the area of the arrest. The State also stated that it did not have a good reason for striking Venireperson Cobb but struck her because "she worked in a casino, so she works in the same industry" but did not specify who else worked in the same industry.

After the State provided its reasoning, Defendant made no further argument regarding Venireperson Cobb. Defendant, however, did say that Venireperson Britt had said that he did not know anything about the case and did not have any bias. The State then attempted to distinguish two white jurors, venirepersons Staum and Peterson, who also lived in the same area but were not struck by the State. The State argued that venirepersons Staum and Peterson were pro-State and that the State expected that Defendant would strike them. In fact, Defendant did strike venirepersons Staum and Peterson. Defendant responded that they were still similarly situated jurors because the State did not actually strike them.

The trial court then considered the credibility of the prosecutor and noted the composition of the State's strikes and the jury panel after the strikes. The State used five of its six peremptory challenges on African–American jurors, and the resulting jury consisted of three African–American jurors and nine white jurors. The trial court also stated that "the State's exercise of strikes showed some selectivity." The trial court then said that it was concerned that even if the State expected Defendant to strike certain jurors, the State could still not strike only jurors of one race unless it could distinguish the jurors. The State responded that it had distinguished the jurors. The State ar-

gued that Venireperson Peterson's statements showed that he was pro-State, and the trial court agreed.[7] Venireperson Peterson's statements do not actually support this argument, but Defendant failed to challenge the State's characterization before the trial court. The State further claimed that the tone and manner of Venireperson Staum in discussing her prior drug conviction suggested that she was pro-State. The State supported this claim by mentioning that Defendant must have noted the same tone because Defendant actually struck Venireperson Staum. The trial court found the State's arguments to be persuasive and overruled the challenges.

On appeal, Defendant argues that the State's proffered reasons for striking venirepersons Britt and Watson were pretextual because the State did not actually strike similarly situated white jurors. Defendant also argues that the State's explanation for striking Venireperson Cobb was a pretext for discrimination because the State's reasoning was not clear and the State failed to strike a white juror with whom the State was uncomfortable.

■■■■ The trial court did not err in overruling the *Batson* challenges to the State's strikes of venirepersons Britt, Watson and Cobb. For all of the challenged venirepersons, the State provided a race-neutral explanation for its strikes. The State explained that it struck venirepersons Britt and Watson because they lived in the same area where the arrest took place. " [F]amiliarity with the scene of a crime is a legitimate, race-neutral reason for exclusion of the panel member from the jury." *State v. Williams*, 956 S.W.2d 942, 947 (Mo.App. W.D.1997). Similarly, the State said that it struck Venireperson Cobb because of her occupation as a casino

employee. The employment of a venireperson is a valid race-neutral reason to exercise a strike. *Johnson*, 207 S.W.3d at 37. Although the State did not explain why it considered Venireperson Cobb's employment important, the State still met its burden in the second *Batson* step because it must only provide a race-neutral application beyond a mere unsubstantiated denial. *McFadden*, 216 S.W.3d at 675; *Marlowe*, 89 S.W.3d at 469. The persuasiveness and plausibility of the proffered explanation is not considered until the third step of a *Batson* challenge. *Marlowe*, 89 S.W.3d at 469; *State v. Wright*, 972 S.W.2d 305, 307 (Mo.App. W.D.) (citing *Purkett v. Elem*, 514 U.S. 765, 767–68, 115 S.Ct. 1769, 131 L.Ed.2d 834(1995)).

■■■■ Because the State provided race-neutral explanations for the challenged strikes, the burden shifted to Defendant to prove that the State's reasoning is merely a pretext for racial discrimination. *McFadden*, 216 S.W.3d at 675; *Hampton*, 163 S.W.3d at 904. We accord the trial court great deference in determining if the State's reason was mere pretext because the trial court must evaluate the credibility and demeanor of the State as well as the venirepersons. *Gray*, 887 S.W.2d at 384.

■■■■ For Venireperson Cobb, Defendant failed to challenge the State's proffered explanation for exercising the strike. On appeal, Defendant cannot challenge an explanation that was not properly challenged before the trial court. *State v. Costello*, 101 S.W.3d 311, 312 (Mo.App. E.D.2003). Because Defendant failed to challenge the State's justification, Defendant has not made an effective *Batson* challenge and therefore failed to preserve this issue for appeal. *State v. Williams*,

---

7.  Defendant argues that the trial court agreed sarcastically. Our review is limited to the cold record, and we are unable to find that the statement was made sarcastically.

24 S.W.3d 101, 121 (Mo.App. W.D.2000); *Wright*, 972 S.W.2d at 307. The point related to this issue is denied.

Defendant, however, did challenge the State's race-neutral justification, living in the area, for venirepersons Britt and Watson. Defendant argued that the State failed to strike similarly situated white jurors, specifically venirepersons Peterson and Staum. The existence of similarly situated white jurors who were not struck is a crucial factor that a court should consider in determining if the stated reasons were pretextual. *Marlowe*, 89 S.W.3d at 469. The State contends that the jurors are not actually similarly situated because their comments and demeanor showed that they were pro-State and Defendant was likely to strike them. The record does not support the State's argument that Venireperson Peterson's comments suggested that he was pro-State, but Defendant failed to make this argument to the trial court. Defendant cannot now make this argument on appeal because it was not presented to the trial court. *State v. Bass*, 81 S.W.3d 595, 611 (Mo.App. W.D.2002). The State argued that Venireperson Staum's manner when discussing her prior drug conviction suggested that she was pro-State. Defendant did argue that Venireperson Staum stated that she would be objective but did not challenge the pro-State characterization made by the State. Although references to demeanor should be heavily scrutinized, prosecutorial hunches based on demeanor and manner can be a sufficient basis for using a peremptory strike. *State v. McFadden*, 191 S.W.3d 648, 655 (Mo. banc 2006) (noting that vague references to demeanor should be heavily scrutinized); *State v. Morrow*, 968 S.W.2d 100, 114 (Mo. banc 1998) (finding a venireperson's hesitation and body language was a legitimate basis for a strike). The State's perception of venirepersons Peterson and Staum as being pro-State is further supported by the fact that Defendant actually did strike both of them.

Because of the perceived pro-State demeanor of venirepersons Peterson and Staum, the State also believed that Defendant was likely to strike them. The Missouri Supreme Court found a juror to be not similarly situated to a struck juror in part because the prosecutor expected the defendant to strike the juror. *State v. Smith*, 944 S.W.2d 901, 913 (Mo. banc 1997). The State successfully distinguished venirepersons Peterson and Staum from venirepersons Britt and Watson because of their pro-State manner and the State's belief that Defendant would strike them for the same reason.

Although a crucial factor, whether a similarly situated white juror exists is not dispositive of whether the strikes were discriminatorily made. *Marlowe*, 89 S.W.3d at 469; *State v. Collins*, 290 S.W.3d 736, 742 (Mo.App. E.D.2009). The trial court also considered other factors including the make-up of the jury and the State's strikes and the credibility of the prosecutor. The trial court noted that the State had shown some selectivity in exercising its challenges and asked for further explanation from the State. After the State stated its belief that the venirepersons were pro-State, the trial court implicitly found the State credible because the trial court found the State's explanations persuasive. Based on the totality of the circumstances in this case, Defendant failed to meet its burden of showing that the State's explanation was merely a pretext for discrimination. Point denied.

### Search and Seizure

In his final point on appeal, Defendant claims the trial court erred in denying Defendant's motions to suppress drug evidence seized from Defendant and Defen-

dant's post-arrest statements. Defendant argues that the police officers did not have a reasonable suspicion to approach Defendant, and the drug evidence and post-arrest statements were the fruit of an illegal seizure. We disagree.

We ordinarily review the denial of a motion to suppress to determine if there was substantial evidence to support the decision and will only reverse if the trial court's ruling is clearly erroneous. *State v. Gaw*, 285 S.W.3d 318, 319–20 (Mo. banc 2009); *State v. Ross*, 254 S.W.3d 267, 272 (Mo.App. E.D.2008). In making this determination, we view the evidence and all reasonable inferences therefrom in the light most favorable to the trial court's ruling. *Ross*, 254 S.W.3d at 272. Because the trial court has a superior opportunity to determine the credibility of witnesses, we defer to the trial court's credibility determinations and factual findings. *Gaw*, 285 S.W.3d at 319–20; *Ross*, 254 S.W.3d at 272. However, we review questions of law, including whether conduct violates the Fourth Amendment, *de novo*. *Gaw*, 285 S.W.3d at 320; *Ross*, 254 S.W.3d at 273.

Clear error review of the denial of a motion to suppress, however, requires that the moving party properly preserved the trial court error. *Edwards*, 280 S.W.3d at 188. The denial of a motion to suppress is an interlocutory order that is subject to change during trial. *Id.* Therefore, a party seeking to preserve any claimed error related to the denial of a motion to suppress must make a specific objection when the evidence is offered at trial. *Id.* If the moving party fails to properly object at trial, then the claimed errors may only be reviewed for plain error. *Id.* This Court will only reverse under plain error review "where the ruling of the trial court results in a miscarriage of justice or a manifest injustice." *State v. Coyne*, 112 S.W.3d 439, 443 (Mo.App. E.D. 2003); *see also* Rule 30.20.

At trial, Defendant stated that he had no objection to the State's introduction of the crack cocaine into evidence. Defendant also did not object to Officer Sharp's testimony regarding Defendant's statements but did object to Officer Mathew's testimony regarding the same statements. Defendant failed to properly object to the admission of the statements and the drug evidence, and therefore, he has failed to preserve this issue for appellate review. *Edwards*, 280 S.W.3d at 188. Because Defendant failed to preserve this issue for review, we will only review for plain error.[8]

The Fourth Amendment of the United States Constitution and the Missouri Constitution, article 1, section 15, guarantees a person's right to be free from unreasonable searches and seizures. *State v. Pike*, 162 S.W.3d 464, 472 (Mo. banc 2005). Under the Fourth Amendment, a police officer must generally have at least probable cause to justify a search or seizure. *State v. Dye*, 272 S.W.3d 879, 881 (Mo.App. S.D.2008). A police officer, however, may stop a suspect for a limited duration if the officer has a reasonable suspicion supported by articulable facts

---

**8.** Defendant cites *State v. Martin* for the proposition that although he did not properly object at trial, the error was still preserved. 79 S.W.3d 912 (Mo.App. E.D.2002). In *Martin*, the appellate court held that the defendant preserved the alleged trial court error even though the defendant responded "no objection" when the evidence was offered for admission. *Id.* at 915. The defendant had filed a motion to suppress before trial and then reasserted the motion at the start of the trial. *Id.* The trial court ordered the motion to be taken with the case and ruled on the motion at the end of the trial. *Id.* In this case, Defendant failed to reassert the motion to suppress during trial and also did not object to the admission of the evidence. Therefore, *Martin* does not apply to the facts of this case.

that the person is engaged in criminal activity. *Id.* These protections of the Fourth Amendment, however, do not apply until the suspect has actually been "seized." *State v. Mosby,* 94 S.W.3d 410, 416 (Mo.App. W.D.2003).

Not every police-citizen encounter constitutes a "seizure." *State v. Dixon,* 218 S.W.3d 14, 18 (Mo.App. W.D. 2007). "A 'seizure' occurs when the totality of the circumstances surrounding the incident indicates that a reasonable person would have believed that he was not free to leave." *State v. Sund,* 215 S.W.3d 719, 723 (Mo. banc 2007) (internal citations omitted). We look at the totality of the circumstance in determining whether a police encounter constitutes a seizure. *Id.* We will also consider the following non-exhaustive list of factors: "the threatening presence of several officers, the display of a weapon by an officer, some physical touching of the person of the citizen, or the use of language or tone of voice indicating that compliance with the officer's request might be compelled." *State v. Stacy,* 121 S.W.3d 328, 332 (Mo.App. W.D.2003). A "seizure" does not occur until the suspect actually submits to the police's assertion of authority or the police apply physical force against the suspect. *State v. Deck,* 994 S.W.2d 527, 535 (Mo. banc 1999) (citing *California v. Hodari D.,* 499 U.S. 621, 626, 111 S.Ct. 1547, 113 L.Ed.2d 690 (1991)); *Mosby,* 94 S.W.3d at 416.

Defendant filed pretrial motions to suppress the drug evidence and his post-arrest statements. The trial court stated that the motion to suppress the drug evidence could be taken with the case. For the motion to suppress the statements,

Officer Mathews testified at the motion hearing to the following facts: Officers Sharp and Mathews approached Defendant after receiving an anonymous tip of drug activity. Defendant was at the location described by the tipster and matched the tipster's description of the man selling drugs. Officer Mathews approached Defendant and ordered him to take his hand out of his pocket. Defendant did not remove his hand and began to walk away from the officer. Officer Mathews again ordered Defendant to remove his hand, but Defendant again failed to comply. Defendant then fell into a mud hole and while falling, dropped several bags of crack cocaine. Officer Mathews grabbed Defendant and with the help of Officer Sharp arrested Defendant for drug trafficking in the second degree and for resisting arrest. After Officer Mathews read Defendant his *Miranda*[9] rights, Defendant stated that he would provide information about drug dealers if given a break on these charges.

Defendant also testified at the evidentiary hearing. He denied making any statement, and he denied that he had any drugs on him at the time of the arrest. Defendant testified that Officer Sharp ordered him to turn around to be searched and then forced him to the ground after Defendant started to walk away. Defendant testified that he stopped resisting the police after Officer Mathews pointed his gun at Defendant. The trial court explicitly credited the testimony of Officer Mathews and denied Defendant's motion to suppress the statements.[10] Defendant's motion to suppress the drug evidence was also denied on the day of the trial.

9. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

10. The trial court ordered the State not to discuss parts of Defendant's statement regarding Defendant's recent release from prison, but this part of the trial court's order is irrelevant to the resolution of Defendant's point on appeal.

On appeal, Defendant claims the trial court erred in overruling his motions to suppress because officers did not have a reasonable suspicion of criminal activity to allow them to approach Defendant. Defendant argues that an anonymous tip without an independent basis to suspect illegal activity was insufficient to provide reasonable suspicion. Therefore, the trial court should have suppressed Defendant's statements and the seized drug evidence because they were the fruit of an unlawful stop.

The trial court did not err in overruling Defendant's motions to suppress because Defendant was not seized by police at the time the officers approached Defendant. We defer to the trial court's credibility determinations and factual findings. *Gaw,* 285 S.W.3d at 319–20; *Ross,* 254 S.W.3d at 272. The trial court found Officer Mathews credible when he testified that Defendant did not voluntarily submit to the officer's orders to remove his hands. The State showed that Defendant did not voluntarily submit to Officer Mathew's show of authority and that at the time of the initial approach, the officers had not yet applied physical force against Defendant. Defendant was thus not seized at the time the officers approached him. *Mosby,* 94 S.W.3d at 416.

Defendant's failure to comply distinguishes this case from *State v. Gabbert,* on which Defendant relies. 213 S.W.3d 713 (Mo.App. W.D.2007). In *Gabbert,* the defendant actually complied with the officer's order to remove his hands. *Id.* at 718–19. The trial court found that he had been seized, and the appellate court affirmed the granting of the motion to suppress. *Id.* Here, Defendant did not comply and was therefore not seized. The protections of the Fourth Amendment did not yet apply, and the officers did not need probable cause or even a reasonable suspicion

merely to approach Defendant. *Mosby,* 94 S.W.3d at 416. Point denied.

### Conclusion

The evidence was insufficient to support Defendant's conviction for resisting arrest. We therefore reverse the judgment of the trial court and vacate Defendant's conviction and sentence for resisting arrest. We affirm the judgment of the trial court on all other points.

KATHIANNE KNAUP CRANE, P.J., and CLIFFORD H. AHRENS, J., concur.